UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SAMUEL C. RUTHERFORD III, both individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CENTRAL BANK OF KANSAS CITY,<br><br>Defendant. | NO. 3:24-cv-5299<br><br>COMPLAINT<br>(CLASS ACTION) |

Plaintiff Samuel C. Rutherford III ("Rutherford"), on behalf of himself and all others similarly situated, brings this Class Action Complaint against Defendant Central Bank of Kansas City ("CBKC"). The following allegations are based on personal knowledge as to Defendant CBKC's conduct and are made on information and belief as to all other matters based upon the undersigned counsels' investigation.

## I. INTRODUCTION

1. Working with Stored Value Cards, Inc. d/b/a Numi Financial ("Numi"), Defendant CBKC exploited Plaintiff Rutherford and members of the class during the chaotic and confusing times that they were arrested, detained, and released from custody. When individuals are arrested and detained, detention facilities confiscate their

COMPLAINT – 1

personal property, including cash. Numi and CBKC saw the opportunity to make money from this straightforward transaction, solely at the expense of those released.

2. Numi, Defendant CBKC, and other vendors have sought contracts with detention facilities to obtain confiscated funds in order to then issue prepaid debit cards ("release cards") that persons released from custody must accept to access their money. Detention facilities are not charged for this service. Instead, these vendors profit from fees charged to the involuntary cardholders, including periodic service fees for merely possessing the release card. Persons receiving release cards, including Plaintiff Rutherford, are provided with no other option for the return of their money. If they refuse to accept a release card, then their funds will be depleted through monthly or weekly service fees regardless of whether the release card is taken from the jail or ever used.

3. In order to implement this scheme, Defendant CBKC arranges for money obtained from Plaintiff Rutherford and the members of the class to be transferred to its accounts without their consent or knowledge. The release card is then issued by Defendant CBKC, who holds and controls the funds, including disbursements of fees charged to Plaintiff Rutherford and class members. Defendant CBKC knows that the card recipients neither requested their funds be transferred to the bank nor requested Defendant CBKC's fee-laden release card be used to return their money. Despite this, a sticker affixed to the release card before it was loaded, activated, and handed to Plaintiff Rutherford and others stated that they "authorize[d] and request[ed] the return of my funds" on the release card.

4. The release cards were never "requested" by Plaintiff Rutherford and other releasees who had no choice but to accept the card if they wanted their money returned to them. Likewise, Plaintiff Rutherford and other releasees never "authorized" Defendant CBKC to take their funds, deposit those funds in a CBKC account, and then

COMPLAINT – 2

put them on an activated and validated release card—all violations of the Electronic Fund Transfer Act, 15 U.S.C. § 1693 ("EFTA").

5. Defendant CBKC provides its copyrighted cardholder agreement with the release card that purports to authorize it to collect fees and impose other obligations on the involuntary recipients. It states: "This Cardholder Agreement ("Agreement") sets forth the terms and conditions under which Central Bank of Kansas City ("CPKC" or "Issuer") has issued the Prestige Prepaid MasterCard to you." This "agreement" was not provided to Plaintiff Rutherford and other class members until after their money was transferred to, and under control of, Defendant CBKC, the release card was loaded with their funds, the release card was activated and ready for use, and the release card was handed to the recipient.

6. After illegally issuing activated and validated release cards to involuntary consumers, Defendant CBKC and Numi then took money from those individuals by charging an array of fees "authorized" under the Cardholder Agreement that the consumers never agreed to, including "maintenance" fees, cash withdrawal fees, balance inquiry fees, and the like. The releasees never agreed to these fees, and never agreed that Defendant CBKC could take possession of their money. The individuals became involuntary "customers" of Defendant CBKC, paying fees and charges that they never agreed to.

7. Plaintiff Rutherford was in custody at the Pierce County Jail and released on April 22, 2023. When he was booked into the jail, he had approximately $300, which was taken from him and deposited into an account at CBKC. While he was at the jail, he was sent additional funds from others, which was also put in his jail trust account. When he was released, this money was returned to him on a prepaid debit card issued by Defendant CBKC. Plaintiff Rutherford asked for his money to be returned in cash but was told that the only way he could receive his money back was through the CBKC prepaid

COMPLAINT – 3

debit card. Plaintiff Rutherford was subsequently charged a variety of fees by Defendant CBKC, including a balance inquiry fee, a declined transaction fee, a withdrawal fee, and a maintenance fee.

8. Defendant CBKC has engaged in a pattern of unlawful, deceptive, unfair, and unconscionable profiteering in seizing money from releasees, transferring that money to an account controlled by CBKC, and then issuing an unrequested activated prepaid release card to individuals released from jails and prisons. In so doing, Defendant CBKC has violated the EFTA and, for the Washington Subclass defined herein, the Washington Consumer Protection Act, RCW 19.86. In addition, for the Washington Subclass, Defendant CBKC has converted funds and been unjustly enriched by its conduct.

## II. THE PARTIES

9. Plaintiff Rutherford lives in and is a citizen of Pierce County, Washington. Plaintiff Rutherford involuntarily received an activated, fee-laden debit card issued by Defendant CBKC when he was released from Pierce County Jail.

10. Defendant CBKC is a state-chartered bank based in Kansas City, Missouri. Defendant CBKC has contracted with Numi to issue prepaid debit cards nationwide.

## III. JURISDICTION AND VENUE

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States, namely 42 U.S.C. § 1983 and 15 U.S.C. § 1693.

12. This Court may exercise supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant CBKC is subject to personal jurisdiction in this District and a substantial part of the events or omissions giving rise to the claim occurred within this District.

COMPLAINT – 4

## IV.  FACTS

**A.    Pierce County's Inmate Release Card Program**

14.    Pierce County contracted with Numi for provision of prepaid debit cards to all released inmates. Under the contract, Numi may select and/or change the card brand, issuing bank, or program manager at any time without the County's approval. By at least April 17, 2023, Numi and Defendant CBKC contracted with each other to collect and control funds from releasees from Pierce County Jail and return those funds to releasees through release cards issued by Defendant CBKC.

15.    Since before April 17, 2023, Pierce County began providing prepaid debit cards to released inmates, in lieu of a check. The cards were loaded with funds, activated, and ready for immediate use prior to being given to the released inmate.

16.    Upon information and belief, Defendant CBKC has issued thousands of release cards to members of the class. It continues to do so.

17.    Inmates with $22.94 or less in their accounts often cannot access their money because, even if they are able to find an ATM that does not charge its own fee in addition to the $2.95 charged by Defendant CBKC, the account balance dips below $20—the minimum withdrawal amount at most ATM machines. These low-balance cards are not just particularly lucrative for Defendant CBKC; they are also uniquely burdensome on the cardholder.

18.    On information and belief, individuals who are deported after their arrest and released back in their home country may not be able to access their funds at all—even before the $4.95 international ATM fee is charged. Many released individuals report that prepaid debit cards and/or their PIN numbers do not work abroad, or that limits on international ATM withdrawals force them to accrue additional withdrawal fees.

19.    Individuals released from Pierce County Jail do not voluntarily engage Defendant CBKC, enroll in the program, or take any affirmative steps to form any

COMPLAINT – 5

contractual relationship with Numi, Defendant CBKC, or MasterCard. They have no choice but to accept a release card; receiving the return of their own money in the form of cash or check is not an option. If a released inmate refuses to accept a release card, they simply lose their money as the balance is depleted by imposition of the fees.

**B.  Plaintiff Rutherford's Experience**

20. Plaintiff Rutherford resides in Pierce County, Washington. In 2023, he was incarcerated at the Pierce County Jail.

21. Upon being taken into custody, Plaintiff Rutherford's cash—totaling approximately $300—was confiscated from him. During his incarceration, additional funds were deposited into his inmate trust account. Plaintiff Rutherford was entitled to all the funds held in his inmate trust account—both the funds confiscated from him and the funds deposited for him—upon his release from jail.

22. Plaintiff Rutherford was released from Pierce County Jail on April 22, 2023. Upon his release, he received his personal property back, but he did not get his cash. Instead, a Pierce County Jail officer gave him an activated prepaid debit release card from Defendant CBKC loaded with the confiscated amount. Someone—not Plaintiff Rutherford—wrote his name on the signature line of the release card. Plaintiff Rutherford asked for his money to be returned in cash but was told that the only way he could receive his money back was through the release card being handed to him.

23. When handed to Plaintiff Rutherford upon his release, the release card issued by Defendant CBKC was already activated. Plaintiff Rutherford made no request for activation or validation before the card was handed to him.

24. Plaintiff Rutherford never applied for the release card issued by Defendant CBKC. Plaintiff Rutherford never applied for any release card issued by any entity.

25. Plaintiff Rutherford never requested, orally or in writing, that his money be returned to him in a release card.

COMPLAINT – 6

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

26. Plaintiff Rutherford never wanted to enter into any contract with Defendant CBKC.

27. Plaintiff Rutherford never authorized Defendant CBKC to take, transfer, possess, or control his money.

28. Plaintiff Rutherford was never provided with an opportunity to review any of the fees or other terms and conditions associated with the release card issued by Defendant CBKC prior to it being activated and validated. Plaintiff Rutherford never agreed to any of the terms and conditions in the paperwork that was handed to him simultaneously with his receipt of a release card that was already activated.

29. Plaintiff Rutherford had no choice but to accept the release card instead of his cash. Plaintiff Rutherford could not meaningfully object to receiving the prepaid debit card. Plaintiff Rutherford's receipt of his cash back in the form of the release card was completely and utterly involuntary.

30. On the day of his release, April 22, 2023, Plaintiff Rutherford went to a cash machine to retrieve his cash. He was charged a fee for inquiring about the balance on the card. He then attempted to withdraw those funds, but his transaction was declined because the balance inquiry fee had reduced his balance. He was charged a fee for the declined transaction. He then withdrew $490.00 from the release card. He was charged yet another fee for the withdrawal. After the withdrawal and fees, $2.54 was left on the card. Unable to withdraw that sum from a cash machine, it was subsequently taken from the release card by Defendant CBKC in the form of a maintenance fee.

## V.  CLASS CLAIMS

31. Defendant CBKC has engaged in the same conduct with respect to thousands of released inmates across the United States.

32. Plaintiff Rutherford brings this action on behalf of himself and all others similarly situated pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) on behalf of the

COMPLAINT – 7

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

following nationwide Class: All persons in the United States who, at any time since April 17, 2023, were: (1) taken into custody at a jail, correctional facility, detainment center, or any other law enforcement facility; (2) entitled to the return of money either confiscated from them or remaining in their inmate accounts when they were released from the facility; and (3) issued a prepaid debit card from CBKC that was subject to fees, charges, and restrictions. This class shall be referred to as the "Nationwide Class."

32. Additionally, Plaintiff Rutherford seeks to represent the following Washington Subclass: All persons who, at any time since April 17, 2020, were: (1) taken into custody at a jail, correctional facility, detainment center, or any other law enforcement facility located in the State of Washington; (2) entitled to the return of money either confiscated from them or remaining in their inmate accounts when they were released from the facility; and (3) issued a prepaid debit card from CBKC that was subject to fees, charges, and restrictions. This class shall be referred to as the "Washington Subclass." The Nationwide Class and the Washington Subclass are collectively referred to herein as the "Class."

33. The Nationwide Class and the Washington Subclass are both so numerous that joinder of all members is impracticable. Each class has more than 1,000 members.

34. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Questions of law and fact common to the Class include but are not limited to:

    (a) Whether Defendant CBKC illegally issued activated release cards to Plaintiff Rutherford and the Class in violation of the EFTA;

    (b) Whether the CBKC release card that the Class received carried unlawful fees;

    (c) Whether Defendant CBKC improperly took and exercised control over the funds of the Class without their consent or agreement;

COMPLAINT – 8

(d)   Whether Defendant CBKC violated the Electronic Fund Transfer Act, 15 U.S.C. 1693, *et seq.*;

(e)   Whether Defendant CBKC engaged in unfair or deceptive acts or practices in the conduct of any trade or commerce and thus violated the Washington Consumer Protection Act, RCW 19.86;

(f)   Whether Defendant CBKC was unjustly enriched through its prepaid card policies and practices;

(g)   Whether Defendant CBKC converted money belonging to the Class by taking unlawful fees;

(h)   Whether and what form(s) of relief should be afforded to the Class; and

(i)   Whether the Class has suffered damages as a result of Defendant CBKC's actions, and if so, the measure and amount of such damages, including any statutory damages.

35.   Plaintiff Rutherford's claims are typical of the claims of the other members of the Class he seeks to represent. Defendant CBKC's practices have targeted and affected all members of the Class in a similar manner; i.e., they have all sustained damages arising out of Defendant CBKC's practices.

36.   Plaintiff Rutherford will fully and adequately protect the interests of all members of the Class. Plaintiff Rutherford retained counsel experienced in both complex class action and consumer fraud litigation, including expertise in litigating over release cards. Plaintiff Rutherford has no interests which are adverse to or in conflict with the interests of the other members of the Class.

37.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impracticable. The prosecution of separate actions by individual members of the Class

COMPLAINT – 9

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

would impose heavy burdens upon the courts and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action, on the other hand, would achieve substantial economies of time, effort, and expense, and would assure uniformity of decision with respect to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

38. The interests of the members of the Class in individually controlling the prosecution of separate actions are theoretical rather than practical. The Class has a high degree of cohesion, and prosecution of the action through representatives would be unobjectionable. The damages suffered by the individual Class members may be relatively small. Therefore, the expense and burden of individual litigation make it virtually impossible for Class members to redress the wrongs done to them. Plaintiff Rutherford anticipates no difficulty in management of this action as a class action.

39. Defendant CBKC has acted or refused to act on grounds generally applicable to each member of the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

## VI.  FIRST CAUSE OF ACTION
### (Electronic Fund Transfer Act, 15 U.S.C. § 1693, *et seq*.)

40. Plaintiff Rutherford re-alleges and incorporates by reference all of the allegations of this Complaint with the same force and effect as if fully restated herein.

41. The primary objective of the EFTA is to protect consumer rights by providing a basic framework establishing the rights, liabilities, and responsibilities of participants in the electronic fund and remittance transfer systems.

42. Defendant CBKC is a financial institution as defined by 15 U.S.C. § 1693a(9) and 12 C.F.R. § 1005.2(a)(2)(i) because it directly or indirectly holds accounts belonging to consumers and/or it issues an access device to consumers. It is also a

COMPLAINT – 10

"person" subject to liability under 15 U.S.C. § 1693m(a) for failing "to comply with any provision" of the EFTA.

43. Plaintiff Rutherford and members of the Class are "consumers" under 15 U.S.C. § 1693a(6).

44. Under the EFTA, an unsolicited card is permitted only if all the following conditions are met:

> (1) such card, code, or other means of access is not validated;
>
> (2) such distribution is accompanied by a complete disclosure, in accordance with section 1693c of this title, of the consumer's rights and liabilities which will apply if such card, code, or other means of access is validated;
>
> (3) such distribution is accompanied by a clear explanation, in accordance with regulation of the Bureau, that such card, code, or other means of access is not validated and how the consumer may dispose of such code, card, or other means of access if validation is not desired; and
>
> (4) such card, code, or other means of access is validated only in response to a request or application from the consumer, upon verification of the consumer's identity.

15 U.S.C. § 1693i(b). *See also* 12 C.F.R. § 1005.5(b) (same); 12 C.F.R. § 1005.2(a)(1) ("'Access device' means a card…").

45. This statutory and regulatory scheme protects consumers by mandating that before a card is validated, the consumer must receive a complete disclosure of the rights and liabilities that "will apply if such card … is validated."

46. "Validation" occurs when the card "may be used to initiate an electronic fund transfer." 15 U.S.C. § 1693i(c). In other words, a validated card is one that is already activated. The CBKC release cards issued to Plaintiff Rutherford and class members were already validated.

COMPLAINT – 11

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

47. The EFTA regulates the precise form of assent necessary to make the terms and conditions binding on the consumer. Pursuant to Section 4, assent to the issuance of the card (and its corresponding terms and conditions) can only occur "in response to a request or application from the consumer." 15 U.S.C. § 1693i(b)(4). The consumer must also be provided with the terms and conditions before the card is validated so that the consumer can decide whether to accept those terms. 15 U.S.C. § 1693i(b)(2). No other form of assent is recognized by statute. 15 U.S.C. § 1693i(a), (b). As a result, a consumer cannot be said to have "assented" to a contract for a card by simply taking it upon release, or subsequently using the card. Under the EFTA, there is only one way that an unsolicited card would be valid under federal law: a consumer must make an affirmative "request or application" for activation. 15 U.S.C. § 1693i(b)(4). With respect to Plaintiff Rutherford and all Class members, the cards were validated before they were even provided to them. No "request" or "application" preceded validation of any of the cards given to Plaintiff Rutherford or Class members upon their release.

48. No contract or agreement was formed between Defendant CBLC and Plaintiff Rutherford and Class members. Defendant CBKC had no authority or right to take money from Plaintiff Rutherford and Class members in the form of fees. Defendant CBKC had no authority or right to transfer funds into an account it controlled and held, conduct specifically prohibited by the EFTA. These transfers are "unauthorized electronic fund transfer[s]" under the EFTA and are illegal. *See* EFTA, 15 U.S.C. § 1693a(12).

49. Plaintiff Rutherford and members of the Class are members of the general public when they receive release cards upon being released from confinement. *Brown v. Stored Value Cards*, 953 F.3d 567, 573 (9th Cir. 2020).

50. Defendant CBKC directly or indirectly offered, advertised, or otherwise promoted release cards to Plaintiff Rutherford and the Class. Numi contracted with

COMPLAINT – 12

1 Defendant CBKC to market their release card program to municipalities and correctional 2 facilities, which indirectly and directly marketed the program to the general public. 3 *Brown*, 953 F.3d at 573. Defendant CBKC and Numi also marketed release card products 4 by advertising and marketing upgrades and additional features for the release cards in 5 materials provided directly to releasees and in internet advertising.

6 51.  The release cards are "general use prepaid card[s]" under the EFTA. Under 7 Section 1693l-1 of the EFTA, it is unlawful for "any person" to impose a service fee with 8 respect to a general use prepaid card. A "service fee" is a "periodic fee, charge, or penalty 9 for holding or use of a … general-use prepaid gift card." Defendant CBKC violated this 10 section, in addition to the other disclosure requirements and prohibitions, of the EFTA 11 and its implementing regulations.

12 52.  Defendant CBKC's violations of the EFTA have caused and continue to 13 cause Plaintiff Rutherford and the Class damages.

14 53.  Plaintiff Rutherford and the Class are entitled to both their actual and 15 statutory damages, as well as reasonable attorney fees and costs, pursuant to 15 U.S.C. 16 § 1693m.

**VII.  SECOND CAUSE OF ACTION**

**(Washington Consumer Protection Act, Wash. Rev. Code Ann. § 19.86, *et seq*.)**

19 54.  Plaintiff Rutherford re-alleges and incorporates by reference all of the 20 allegations of this Complaint with the same force and effect as if fully restated herein.

21 55.  Plaintiff Rutherford brings this action on behalf of himself and the 22 Washington Subclass.

23 56.  Defendant CBKC, Plaintiff Rutherford, and the Washington Subclass 24 members are "persons" within the meaning of Wash. Rev. Code § 19.86.010(1).

COMPLAINT – 13

57. Defendant CBKC is engaged in "trade" or "commerce" within the meaning of Wash. Rev. Code § 19.86.010(2) because the unsolicited release cards can be used in commerce in Washington.

58. The Washington Consumer Protection Act ("Washington CPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code § 19.86.020.

59. In the course of its business, Defendant CBKC, through its agents, employees, and/or subsidiaries, violated the Washington CPA. Specifically, in distributing unsolicited activated prepaid debit cards, wrongfully suggesting that Plaintiff Rutherford and the Class had voluntarily "requested" such cards, and then taking and keeping Plaintiff Rutherford's and the Washington Subclass members' money in the form of exorbitant fees, and in imposing fees for the return of Plaintiff Rutherford's and the Washington Subclass members' money without disclosing in advance that fees would be imposed, Defendant CBKC engaged in unfair and/or deceptive acts or practices in violation of Wash. Rev. Code § 19.86.020.

60. Plaintiff Rutherford and the Washington Subclass members suffered ascertainable losses and actual damages in the loss of their property as a direct and proximate result of Defendant CBKC's unfair and/or deceptive acts or practices.

61. Defendant CBKC's violations present a continuing risk of injury to Plaintiff Rutherford and the Washington Subclass members, as well as to the general public. Defendant CBKC's unlawful acts and practices complained of herein affect the public interest.

62. Pursuant to Wash. Rev. Code § 19.86.090, Plaintiff Rutherford and the Washington Subclass members seek an order enjoining Defendant CBKC's unfair and/or deceptive acts or practices, and awarding damages, treble damages, attorney fees and costs, and any other just and proper relief available under the Washington CPA.

COMPLAINT – 14

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

## VIII. THIRD CAUSE OF ACTION

**(Conversion)**

63. Plaintiff Rutherford re-alleges and incorporates by reference all of the allegations of this Complaint with the same force and effect as if fully restated herein.

64. Pierce County Jail and other correctional facilities that issue Defendant CBKC's release cards have taken money from Plaintiff Rutherford and other members of the Washington Subclass to hold during their incarceration, acting in the capacity of their representative. Upon their release, Pierce County Jail and other correctional facilities were obligated to return the full amount of their money to them. Any purported agreement to use the release cards to return that money, less fees charged by Defendant CBKC, lacks consideration and is unenforceable.

65. Conversion occurs when a person intentionally interferes with chattel belonging to another, either by taking or unlawfully retaining it, thereby depriving the rightful owner of possession. Money may be the subject of conversion if Defendant CBKC wrongfully received it.

66. Defendant CBKC, exercising its control over the funds in the release card accounts, has wrongfully collected fees from Plaintiff Rutherford and members of the Washington Subclass, and has taken specific and readily identifiable funds from Plaintiff Rutherford and the members of the Washington Subclass in payment of these fees.

67. Defendant CBKC, without proper authorization, assumed and exercised the right of ownership over these funds, in hostility to the rights of Plaintiff Rutherford and the Washington Subclass, without legal justification.

68. Defendant CBKC continues to retain these funds unlawfully and without the consent of Plaintiff Rutherford or the Washington Subclass.

69. Defendant CBKC intends to permanently deprive Plaintiff Rutherford and the Washington Subclass of these funds.

COMPLAINT – 15

70. These funds are properly owned by Plaintiff Rutherford and the Washington Subclass, not Defendant CBKC, which now claims that it is entitled to its ownership, contrary to the rights of Plaintiff Rutherford and the Washington Subclass.

71. Plaintiff Rutherford and the Washington Subclass are entitled to the immediate possession of these funds.

72. Defendant CBKC has wrongfully converted these specific and readily identifiable funds.

73. Defendant CBKC's wrongful conduct is continuing.

74. As a direct and proximate result of Defendant CBKC's wrongful conversion, Plaintiff Rutherford and the Washington Subclass have suffered and continue to suffer damages.

75. Plaintiff Rutherford and the Washington Subclass are entitled to damages and prejudgment interest in an amount to be determined at trial.

## IX.  FOURTH CAUSE OF ACTION
### (Unjust Enrichment)

76. Plaintiff Rutherford re-alleges and incorporates by reference all of the allegations of this Complaint with the same force and effect as if fully restated herein.

77. Defendant CBKC has been unjustly enriched by taking funds from the release card accounts under their control in the form of fees assessed upon Plaintiff Rutherford and the Washington Subclass.

78. The circumstances are such that it would be unjust and inequitable for Defendant CBKC to retain the benefit that it unjustly received from Plaintiff Rutherford and the Washington Subclass members.

79. Plaintiff Rutherford and the Washington Subclass members have conferred benefits on Defendant CBKC, which Defendant CBKC has knowingly accepted and retained.

COMPLAINT – 16

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

80. Plaintiff Rutherford and the Washington Subclass members have suffered and continue to suffer actual damages as a result of Defendant CBKC's unjust retention of proceeds from its acts and practices alleged herein.

81. Plaintiff Rutherford and the Washington Subclass members seek to disgorge Defendant CBKC's unlawfully retained benefits resulting from its unlawful conduct, and seek restitution for the benefit of Plaintiff Rutherford and the Washington Subclass.

82. Plaintiff Rutherford and the Washington Subclass members are entitled to the imposition of a constructive trust upon Defendant CBKC, such that its unjustly retained benefits are distributed equitably by the Court to and for the benefit of Plaintiff Rutherford and the Washington Subclass members.

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Rutherford, on behalf of himself and on behalf of the Class, prays for the following relief:

1. An order certifying this case as a class action and appointing Plaintiff Rutherford and the undersigned counsel to represent the Class;

2. Declaration, judgment, and decree that Defendant CBKC's actions alleged herein:

    (a) Violate the Electronic Fund Transfer Act;

    (b) Violate the Washington Consumer Protection Act;

    (c) Constitute conversion; and

    (d) Constitute unjust enrichment;

3. Damages to Plaintiff Rutherford and the Washington Subclass to the maximum extent allowed under state and federal law, including ordering Defendant CBKC to pay actual and statutory damages;

4. Costs and disbursements of the action;

COMPLAINT – 17

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

5.   Restitution and/or disgorgement of ill-gotten gains;

6.   Pre- and post-judgment interest;

7.   Reasonable attorney fees; and

8.   Such other relief, in law and equity, as this Court may deem just and proper.

DATED:  April 18, 2024.

        SIRIANNI YOUTZ
        SPOONEMORE HAMBURGER PLLC

        *s/ Chris R. Youtz*
        Chris R. Youtz, WSBA #7786
        Email:  chris@sylaw.com

        *s/ Richard E. Spoonemore*
        Richard E. Spoonemore, WSBA #21833
        Email:  rick@sylaw.com

        *s/ Eleanor Hamburger*
        Eleanor Hamburger, WSBA #26478
        Email:  ele@sylaw.com

        3101 Western Avenue, Suite 350
        Seattle, WA  98121
        Telephone:  (206) 223-0303
        Fax:  (206) 223-0246

        Attorneys for Plaintiffs

COMPLAINT – 18

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246