UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SAMUEL C. RUTHERFORD, III,<br><br>                Plaintiff,<br>    v.<br><br>CENTRAL BANK OF KANSAS CITY,<br><br>                Defendants. | Case No. 3:24-cv-05299-TLF<br><br>ORDER DENYING MOTION TO COMPEL ARBITRATION AND MOTION TO DISMISS |

This case is a putative class action. This matter comes before the Court on defendant Central Bank of Kansas City's ("CBKC") motion to compel arbitration. Dkt. 14. Plaintiff opposes the motion. Dkt. 22. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. Dkt. 11. For the reasons stated below, the Court denies the motion to compel arbitration with prejudice and denies the motion to dismiss without prejudice.

I.     BACKGROUND

A. <u>General Facts</u>

In 2023, Plaintiff Samuel C. Rutherford III was incarcerated in the Pierce County Jail and was released on April 22, 2023. Dkt. 23, Declaration of Samuel C. Rutherford, at 1 ("Rutherford Decl."). At the time of booking, he had approximately $300 cash on him, which was confiscated and deposited into an account with defendant Central Bank

of Kansas City ("CBKC"). *Id*.  Additional money sent to him by others while he was incarcerated was also deposited into this account. *Id*. Upon release, plaintiff's money was returned to him on a CBKC prepaid debit card. *Id*. at 2.

Plaintiff requested the return of his money in cash but was told that the prepaid debit card was the only way for his funds to be returned to him. *Id*. at 2. A release stated as follows:

> I hereby authorize and request the return of my funds on the Numi Prestige Prepaid Mastercard and confirm receipt of the Cardholder Agreement and Fee Schedule. I understand the Card is active and there may be fees associated with the use of the Card. These fees are listed in the Cardholder Agreement and Fee Schedule. I further understand that I may choose not to use the Card and can request a check be mailed to me in accordance with the terms set forth in the Cardholder Agreement and Fee Schedule.

Dkt. 16, Declaration of Brad D. Golden, Ex. 3 at 14 ("Golden Decl."). After he signed a form authorizing return of his funds on a prepaid MasterCard, plaintiff was handed the prepaid debit card, and a folded Cardholder Agreement. Dkt. 23, Rutherford Decl., at 2. His name had already been written on the signature block on the back of the prepaid MasterCard, by someone other than himself. Dkt. 23, Rutherford Decl., at 2 and Ex. A at 6. Under the signature block the card stated, "By accepting, signing or using this Card, you agree to the terms of the Cardholder Agreement." Dkt. 23, Ex. A at 6; *see also* Dkt. 16, Golden Decl., Ex. 1 at 6.

After his release, plaintiff visited a cash machine and withdrew $494.00 from the prepaid debit MasterCard that had $500.49 loaded on to it. Dkt. 16, Golden Decl., Ex. 4, at 16.

B. <u>Cardholder Agreement</u>

ORDER DENYING MOTION TO COMPEL
ARBITRATION AND MOTION TO DISMISS - 2

The prepaid debit cards are provided through a contract between Numi Financial ("Numi"), a program manager that provides prepaid card management services to banks, and Pierce County that permits Numi to select and/or change the card brand, issuing bank, or program manager at any time without the County's approval. Dkt. 16, Golden Decl., at 1. Here Numi partnered with CBKC. *Id*. Numi requires the facilities it partners with to require inmates to sign a receipt requesting the card. *Id*. at 2. Facilities are also required to provide a Cardholder Agreement and prepaid debit card to released inmates. *Id*.

The Cardholder Agreement begins with a Fee Schedule. Dkt. 17, Declaration of Lawrence Taft, Ex. 1 at 5 ("Taft Decl."). Users are notified that the Card Grace Period is thirty (30) days. *Id*. After the Fee Schedule, the first sentence of the Cardholder Agreement states bolded and in all caps: "NOTICE: THIS AGREEMENT REQUIRES ALL DISPUTES BE RESOLVED BY WAY OF BINDING ARBITRATION UNLESS YOU OPT OUT AS DETAILED IN THE ARBITRATION SECTION BELOW." *Id*. Directly below this, the Cardholder Agreement states:

> YOU CAN ALSO OBTAIN ACCESS TO YOUR FUNDS AT NO CHARGE TO YOU FROM US IF YOU COMPLETE EITHER OF THE FOLLOWING" (A) TRANSFERRING THE ENTIRE AMOUNT OF YOUR FUNDS TO AN EXISTING BANK ACCOUNT BY VISITING WWW.PRESTIGELOGIN.COM; OR (B) PERFORMING A BANK OVER THE COUNTER WITHDRAWAL FOR THE ENTIRE AMOUNT OF YOUR FUNDS.

*Id*.

Under a headline entitled "Arbitration" the Agreement states bolded in all caps: ACTIVATION OR USE OF YOUR CARD ACCOUNT OR CARD CONSTITUTES ACCEPTANCE OF THIS ARBITRATION INCLUDING WAIVER OF YOUR RIGHTS TO CLASS ACTION. *Id*. at 6.

ORDER DENYING MOTION TO COMPEL
ARBITRATION AND MOTION TO DISMISS - 3

II.     DISCUSSION

A.     <u>Motion to Compel Arbitration</u>

1.  Legal Standard

Under the Federal Arbitration Act (FAA), arbitration agreements involving interstate commerce are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Section 2 of the FAA creates a policy favoring enforcement of agreements to arbitrate." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008). Arbitration agreements are a matter of contract, and courts must "enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). As such, they may be invalidated by "'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Id*. (quoting *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

In a motion to compel arbitration the court must determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F. 3d 1126, 1130 (9th Cir. 2000). If the answer to both questions is yes, the court must "enforce the arbitration agreement in accordance with its terms." *Id*.

Courts "rely on the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure" on a motion to compel arbitration because "the district court's order compelling arbitration 'is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate.'" *Hansen v. LMB Mortgage Services, Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) (quoting *Par-Knit Mills, Inc. v.*

*Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n.9 (3d Cir. 1980). "Once a district court concludes that there are genuine disputes of material fact as to whether the parties formed an arbitration agreement, the court must proceed without delay to a trial on arbitrability." *Id*. at 672.

2.  Analysis

- Contract Formation

In determining whether there is an agreement to arbitrate, courts generally must apply "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Both parties agree Washington law applies here. *See* Dkt. 14 at 7, Dkt. 22 at 7.

Under Washington law, a contract is formed when the parties have objectively expressed mutual agreement to a contract's material terms. *Yakima County (West Valley) Fire Protection Dist. No. 12 v. City of Yakima,* 122 Wn.2d 371, 388 (1993). "Mutual assent is gleaned from the outward manifestations and circumstances . . . [of] the transaction. *Burnett v. Pagliacci Pizza, Inc.,* 196 Wn.2d 38, 50 (2020). Contract formation also requires consideration*. Keystone Land & Development Co. v. Xerox Corp.*, 152 Wn.2d 171, 178 (2004).

- Mutual Assent

Defendant argues that plaintiff manifested mutual assent to the terms of the Cardholder Agreement through a course of dealing by accepting and using the prepaid debit MasterCard. Dkt. 14 at 8. Specifically, defendant argues that plaintiff had a meaningful choice of whether to accept and use the prepaid debit card because plaintiff was not required to use the debit card to get his money back and yet plaintiff did not

ORDER DENYING MOTION TO COMPEL
ARBITRATION AND MOTION TO DISMISS - 5

utilize any of the alternative options or opt out of the arbitration provision. *Id*. at 9. Plaintiff responds that no assent was sought or obtained from him because he was required to accept the prepaid debit card and the Cardholder Agreement as a means to access his funds. Dkt. 22 at 10.

Plaintiff relies on *Reichert v. Rapid Invs., Inc.*, 56 F.4th 1220 (9th Cir. 2022) and contends it is similar to this case, as *Reichert* involved the use of prepaid debit cards distributed to prisoners and involved a substantially similar agreement.

In *Reichert*, the Ninth Circuit applied Washington law and determined that neither the plaintiff's retention of the card nor his silence constituted acceptance. *Id*. at 1228. The Court also determined that his use of the card did not constitute assent because the money that the plaintiff withdrew was his own, plaintiff was issued a preactivated card, there was no other way to obtain immediate use of his funds, and the defendant structured its fees to begin deducting after three days regardless of use. *Id*. In that case, the agreement specified that "acceptance and/or use" constituted assent to the terms. *Id*. at 1227.

Defendant attempts to distinguish this case from *Reichert* based on their contention regarding language that acceptance <u>and</u> use of the debit card constituted assent. Dkt. 27 at 2, Defendant's Reply in Support of Motion to Compel Arbitration. However, defendant does not accurately quote the language of the contract in this case. The Cardholder Agreement states: "ACTIVATION OR USE OF YOUR CARD ACCOUNT OR CARD CONSTITUTES ACCEPTANCE OF THIS ARBITRATION." Dkt. 17, Taft Decl., Ex. 1 at 6.

ORDER DENYING MOTION TO COMPEL
ARBITRATION AND MOTION TO DISMISS - 6

Here, it is undisputed that plaintiff was handed this card already activated; someone other than himself had written his name on the signature block on the back of the card; and he was told that he could not receive his money back in cash or by check, but rather, this prepaid MasterCard was the only way for him to receive his funds. Dkt. 23, Rutherford Decl., at 2. Because per the Cardholder Agreement, activation of the card constituted acceptance, plaintiff's subsequent action in using the card to withdraw his own funds does not impact the analysis. *See Brown v. Stored Value Cards*, 2022 WL 17844168 at *2 (9th Cir. Dec. 22, 2021) ("under the express terms of the Cardholder Agreement, a subclass member's 'use' of the card is irrelevant—assent is conditioned on 'accept[ance]' of the card.").

Similarly, the fact that plaintiff withdrew the funds rather than using one of the options provided by CBKC including requesting a check, obtaining a bank teller withdrawal, or opting for a card to bank account transfer, has no impact on the analysis because the card was activated and language in the contract unilaterally stated that once it was activated, plaintiff gave up the right to a class action and was required to arbitrate, regardless of whether he used the card. Dkt. 17 at 6.

Defendant argues that plaintiff could have nonetheless utilized these options to avoid fees, had thirty days to do so, and had utilized the card to bank transfer option in the past. But plaintiff states that upon release he had no other cash and needed the money loaded on the card; so he used the card to withdraw as much money as he could while allowing for the fee. *See* Dkt. 23, Rutherford Decl., at 2-3. Defendant does not dispute plaintiff's assertions about his financial situation. Dkt. 16, Golden Decl., at 3, and Ex. 4 at 16 (facts regarding plaintiff's transaction history for April 22, 2023).

ORDER DENYING MOTION TO COMPEL
ARBITRATION AND MOTION TO DISMISS - 7

This case, therefore, is similar to *Reichert* where the Court held, "[w]ithdrawing the money presented a more immediate way to access the funds than any alternative presented in the fine print Agreement. And Moyer was under no obligation to follow an alternative process, having not assented to the Agreement's terms through retention of the card." *Reichert*, 56 F.4th at 1229. For the same reason, plaintiff's action to utilize the card to withdraw his funds at an ATM rather than initiating a card-to-bank transfer as he had done in 2019 does not allow the Court to deduce mutual assent based on a course of dealings. *See Weiss v. Lonnquist*, 153 Wn. App. 502, 511 (2009).

Defendant cites *Morehouse v. PayPal Inc.*, No. 21-CV-4012 (RA), 2022 WL 912966, at *5 (S.D.N.Y. Mar. 28, 2022) and argues that plaintiff had meaningful choices regarding whether to accept and use the prepaid debit card. Dkt. 14 at 8-9. However, this case is distinguishable from *Morehouse*. The cardholder agreement in *Morehouse* stated "IF YOU DO NOT AGREE TO THE TERMS OF THIS ARBITRATION AGREEMENT, DO NOT ACTIVATE OR USE THE CARD." *Morehouse*, No. 21-CV-4012 (RA), 2022 WL 912966 at *3. Not only did the plaintiff in *Morehouse* create a user account and apply for the card, but she also called a number to activate the card, and acknowledged and agreed to the cardholder agreement by following telephone prompts. *Id*. This is not analogous to this case, where plaintiff had no alternative but to receive his funds on the prepaid card; and even if he utilized the other options the prepaid MasterCard was activated when he received it.

Defendant argues that plaintiff's conduct in not opting out of the Cardholder Agreement's arbitration agreement also manifested assent to arbitration. Dkt. 14 at 9. To support this argument, defendant cites cases where courts found that a provision

ORDER DENYING MOTION TO COMPEL
ARBITRATION AND MOTION TO DISMISS - 8

providing the opportunity to opt out of an arbitration clause provided meaningful choice regarding mutual assent. *Id*. (citing *A.C. by and through Carbajal v. Nintendo of Am. Inc.*, C20-1694 TSZ, 2021 WL 1840835, at *3 (W.D. Wash. Apr. 29, 2021); *Stone v. Mid Am. Bank & Trust Company*, No. 2:18-CV-87-RMP, 2018 WL 4701843, at *6 (E.D. Wash. Aug. 31, 2018); *Reyes v. JPay, Inc., et al.*, No. CV 18-315-R, 2018 WL 10811497, at *2 (C.D. Cal. June 26, 2018); *Black v. JP Morgan Chase & Co.*, Civil Action No. 10–848, 2011 WL 3940236, at *18 (W.D. Pa. Aug. 25, 2011).

Plaintiff argues that these cases are inapplicable because none of these cases involved an opt out provision in a contract that had not been mutually assented to by the parties. Dkt. 22 at 17-18.

*Reyes*, the only case defendant cites involving a similar factual scenario where the plaintiff was presented with a prepaid debit card upon release from prison, involved a cardholder agreement that stated that "[u]se of this card constitutes acceptance of the terms and conditions stated in the [CA]." *Reyes*, No CV 18-315-R, 2018 WL 10811497 at *1. Because, as stated above, in this case the Cardholder Agreement specified that "*activation or* use" (emphasis added) constituted acceptance, plaintiff did not have the same opportunity here to opt-out of the arbitration provision of this contract by not using the card. *See Reichert v. Keefe Commissary Network LLC*, 542 F. Supp. 3d 1133, 1144 (W.D. Wash. 2021), *aff'd sub nom. Reichert v. Rapid Investments, Inc.*, 56 F.4th 1220 (9th Cir. 2022).

In conclusion, defendant has not shown a genuine dispute of material facts on the issue of mutual assent. As a matter of law, the plaintiff did not objectively manifest an agreement to assent to the terms of the contract, and therefore mutual assent to

ORDER DENYING MOTION TO COMPEL
ARBITRATION AND MOTION TO DISMISS - 9

form a contract was not achieved. *Burnett v. Pagliacci Pizza, Inc.,* 196 Wn.2d 38, 50 (2020).[1]  Because no contract was formed, plaintiff is not bound by the arbitration clause of the contract and the motion to compel arbitration is DENIED.

B. <u>Motion to Dismiss</u>

Defendant alternatively argues that this case should be dismissed for lack of standing or based on the rule against double recovery. Dkt. 14 at 11-13.

Federal courts have jurisdiction over live "Cases" and "Controversies." *TransUnion v. Ramirez*, 594 U.S. 413, 423 (2021). A case or controversy requires standing. *Id*. To establish standing a plaintiff must establish that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders or Wildlife*, 504 U.S. 555, 560-61 (1992)).

Here defendant challenges the first element, injury in fact. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 339 (citing *Lujan* at 560). Defendant argues that plaintiff is a member of a settlement class in another action, *Brown v. Stored Value Cards, Inc.*, Case No 3:15-cv-01370-MO (D. Or.); defendant asserts a settlement in that case will fully compensate plaintiff for the specific harms alleged here. Dkt. 14 at 11. Defendant's

---

[1] Plaintiff has not argued the arbitration clause would be unenforceable on the basis of procedural or substantive unconscionability. *See Burnett,* at 56-63.

ORDER DENYING MOTION TO COMPEL
ARBITRATION AND MOTION TO DISMISS - 10

argument regarding double recovery similarly relies on plaintiff's membership in the *Brown* class. *Id*. at 12-13.

Plaintiff responds that although there is a proposed settlement in *Brown*, it is not final as it has not received final court approval as required by Fed. R. Civ. P. 23(c)(2).[2] Dkt. 22 at 20. On August 19, 2024, plaintiff informed the Court that on August 7, 2024, he submitted notice that he chose to opt out of the *Brown* case and its settlement. Dkt. 31.

At this time, it is not clear from the record whether plaintiff's membership in *Brown* would now or in the future bar his recovery in this case; but it appears that plaintiff's case is not moot. *See Campbell-Ewald v. Gomez*, 577 U.S. 153, 165 (2016) ("an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case"). For this reason, the Court DENIES defendant's motion without prejudice.

## CONCLUSION

For the reasons stated herein, the motion to compel arbitration is DENIED with prejudice. The motion to dismiss is DENIED without prejudice.

Dated this 29th day of August, 2024.

Theresa L. Fricke
United States Magistrate Judge

---

[2] Plaintiff filed a surreply objecting to the defendant's claim-splitting argument because it was raised for the first time in a reply brief. Dkt. 29. Because the Court is denying the defendant's motion to dismiss as unsupported by the record and plaintiff's case is not moot at the current time, the plaintiff's objection discussed in their surreply is denied.

ORDER DENYING MOTION TO COMPEL
ARBITRATION AND MOTION TO DISMISS - 11