UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SAMUEL C. RUTHERFORD, III,<br><br>      Plaintiff,<br><br> v.<br><br>CENTRAL BANK OF KANSAS CITY,<br><br>      Defendants. | Case No. 3:24-cv-05299-TLF<br><br>ORDER ON PLAINTIFF'S MOTION FOR CLASS CERTIFICATION |

**INTRODUCTION**

This matter comes before the court on plaintiff's motion for class certification. Dkt. 47. Plaintiff seeks to certify a national class bringing claims under the Electronic Funds Transfer Act (EFTA) and a Washington subclass bringing claims under the Washington Consumer Protection Act (WCPA), and claims based on conversion and unjust enrichment. The Court held oral argument on this motion on January 14, 2025. For the reasons stated below, the Court DENIES in part and GRANTS in part plaintiff's motion.

**BACKGROUND**

**1. Facts**

This case concerns prepaid debit cards issued by defendant Central Bank of Kansas City ("CBKC"). Dkt. 1, Complaint. CBKC contracts with detention facilities to obtain funds confiscated from incarcerated individuals and these cards are provided to

return inmate trust funds upon release. *Id*. at 2. A Cardholder Agreement is provided along with the cards. *Id*. at 3. The cards at issue have a 30-day grace period before a $5.95 monthly fee is assessed. Dkt. 50 at 4. Other fees associated with other types of transactions are disclosed at the top of the Cardholder Agreement. *Id*.

### 2. Plaintiff Rutherford

Plaintiff Rutherford was incarcerated at Pierce County Jail in 2023 and upon release was issued a prepaid debit card from CBKC. Dkt. 1. at 6. The card was preloaded with funds confiscated from him when he was taken into custody and funds that were deposited into his account during his incarceration; the card was already activated when he received it. *Id*. Plaintiff did not apply for or request the card and had no choice but to accept the release card instead of cash. *Id*. at 6-7. Plaintiff incurred fees when he withdrew his funds from a cash machine. *Id*. at 7.

### 3. Proposed Class Definitions

Plaintiff moves to certify two classes. The first is a nationwide class under the EFTA, 15 U.S.C. §1693, *et seq*.:

> All persons in the United States who, at any time since April 17, 2023, were: (1) taken into custody at a jail correctional facility, detainment center, or any other law enforcement facility; (2) entitled to the return of money either confiscated from them and/or remaining in their inmate accounts when they were released from the facility, which was loaded or otherwise transferred to a prepaid debit card without their permission; (3) issued that prepaid debit card by Central Bank of Kansas City to pay the money owed to them; (4) incurred fees or other charges on such card(s); and (5) did not file a claim and receive an individual monetary recovery from the case captioned *Brown v. Stored Value Cards, et al.*, United States District Court for the District or Oregon, Cause No. 3:15-cv-01370-MO.

Dkt. 47 at 10.

ORDER ON PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION - 2

Plaintiff moves to certify the following Washington subclass for conversion claims, unjust enrichment claims, and claims under the WCPA, RCW 19.86, *et seq*.:

> All persons who, at any time since April 17, 2020, were: (1) taken into custody at a jail correctional facility, detainment center, or any other law enforcement facility located in the state of Washington; (2) entitled to the return of money either confiscated from them and/or remaining in their inmate accounts when they were released from the facility, which was loaded or otherwise transferred to a prepaid debit card without their permission; (3) issued that prepaid debit card by Central Bank of Kansas City to pay the money owed to them; (4) incurred fees or other charges on such card(s); and (5) did not file a claim and receive an individual monetary recovery from the case captioned *Brown v. Stored Value Cards, et al.*, United States District Court for the District of Oregon, Cause No. 3:15-cv-01370-MO.

Dkt. 47 at 10.

## DISCUSSION

A party seeking to certify a class must meet the requirements of FRCP 23(a). These requirements are:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class

Fed. R. Civ. P. 23(a).

The party must also satisfy at least one of the requirements of Fed. R. Civ. P. 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). Plaintiff relies on Fed. R. Civ. P. 23(b)(3). Dkt. 47 at 21-22. Fed. R. Civ. P. 23(b)(3) requires a court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

ORDER ON PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION - 3

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Dukes,* 564 U.S. at 350. Courts must "engage in a 'rigorous analysis' of each Rule 23(a) factor when determining whether plaintiffs seeking class certification have met the requirements of Rule 23." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011) (quoting *Gen. Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982). This will often involve overlap with the merits of plaintiff's claim. *Dukes*, 564 U.S. at 251.

1. **Rule 23(a)**

    A. Numerosity

Determining numerosity "requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw., Inc. v. Equal Emp. Opportunity Comm'n*, 446 U.S. 318, 330 (1980)

Plaintiff asserts the defendant issued 2,073,366 release cards between April 17, 2020 and November 1, 2023. Dkt. 39 at 2. 51,572 of these release cards were issued in Washington State. Dkt. 49 at 5. Plaintiff's counsel declares that they received this data from Numi in connection with the *Brown* Settlement. *Id*. Defendant argues that numerosity is lacking because members of the *Brown* class are enjoined and barred from asserting those claims here. Dkt 50 at 6-8.

The Numi Settlement in *Brown* defined "Class Release Claims" as

> all claims of any nature whatsoever that were brought or could have been brought against the Releasees, by the Plaintiff on behalf of the Class Members, including but not limited to claims for all benefits, losses, opportunity losses,

ORDER ON PLAINTIFF'S MOTION FOR CLASS CERTIFICATION - 4

damages, attorneys' fees, costs, expenses, contribution, indemnification or any type of legal or equitable relief.

Dkt. 53 at 41. "Releasees" are defined as "Numi and its shareholders, directors, officers, employees, and its predecessors and successors in interest." *Id*. The Numi settlement precludes any member of *Brown* from bringing any claims against the Releasees; and the definition of Releasees does not include CBKC. Therefore, the Numi settlement does not limit members of the *Brown* class from asserting claims here.

Similarly, the CNB settlement in *Brown* defined Releasees as "CNB and each of its affiliates, subsidiaries, parents, fiduciaries, trustees, recordkeepers, partners, attorneys, administrators, representatives, agents, directors, officers, employees, insurers, reinsurers, predecessors, and their successors-in-interest..." Dkt. 53 at 31. There is no evidence that either of these settlement agreements intended to release CBKC from liability. CBKC is a different defendant and is sued based on its own violations of the EFTA and the Washington state-law claims.

The class is therefore not limited to those who opted out of *Brown*. The class definitions exclude individuals who filed for and received a recovery in *Brown*. Plaintiff has sufficiently shown adequate numerosity.

B.  Commonality

Commonality requires a showing that "the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (quoting *Gen. Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 (1982)). This requires a "common contention" which is one "capable of classwide resolution" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*.

ORDER ON PLAINTIFF'S MOTION FOR CLASS CERTIFICATION - 5

Defendant does not dispute that the class may share common issues of law, such as the correct interpretation of the EFTA, but argues that commonality is lacking because CBKC's defenses differ significantly based on whether each class member has standing considering the release in the *Brown* Settlement Agreement. Defendant contends that if the cards were not requested, the Court will have to conduct individual analyses and threshold determinations about standing. Dkt. 50 at 9.

Several questions are common to the class. For the class as a whole, plaintiff raises claims under the EFTA. The EFTA prohibits the issuance of an unsolicited card unless:

> (1) such card, code, or other means of access is not validated;
>
> (2) such distribution is accompanied by a complete disclosure, in accordance with section 1693c of this title, of the consumer's rights and liabilities which will apply if such card, code, or other means of access is validated;
>
> (3) such distribution is accompanied by a clear explanation, in accordance with regulations of the Bureau, that such card, code, or other means of access is not validated and how the consumer may dispose of such code, card, or other means of access if validation is not desired; and
>
> (4) such card, code, or other means of access is validated only in response to a request or application from the consumer, upon verification of the consumer's identity.

15 U.S.C. § 1693i(b).

The complaint raises questions under the EFTA such as whether CBKC violated the EFTA by issuing activated release cards to consumers who did not request the card, whether CBKC violated the EFTA by obtaining funds from individuals and activating the prepaid debit card before providing the information required by the EFTA, and whether CBKC violated the EFTA by charging a service or maintenance fee. *See* Dkt. 1 at 10-13.

As for the Washington subclass, the complaint raises common questions under the WCPA), and common law conversion and unjust enrichment. Under the WCPA, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020. Conversion "occurs when a person intentionally interferes with chattel belonging to another, either by taking or unlawfully retaining it, thereby depriving the rightful owner of possession." *Alhadeff v. Meridian on Bainbridge Island, LLC*, 167 Wn.2d 601, 619 (2009). A party bringing an unjust enrichment claim must show:

> (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.

*Nwauzor v. the Geo Group, Inc*., 2 Wn.3d 505, 525 (2023) (quoting *Young v. Young*, 164 Wn.2d 477, 484 (2008) (internal quotation omitted).

The questions raised by the complaint include:

- Whether CBKC's actions constituted a deceptive trade practice in violation of the WCPA. *Id*. at 14.

- Whether CBKC's action of taking money from members of the Washington subclass to hold during their incarceration and then taking a portion of that money in the form of fees constituted conversion. *Id*. at 15-16.

- Whether CBKC has been unjustly enriched by taking funds from the release card accounts in the form of fees from member of the Washington subclass. *Id*. at 16-17.

ORDER ON PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION - 7

Defendant contends that because there is a difference between those subject to the "old" Cardholder Agreement and the "amended" Cardholder Agreement, individualized inquiries will be made to determine standing. Yet the difference between the language of the agreement plaintiff has challenged, as opposed to the new language, does not impact commonality but is an appropriate consideration for the Fed. R. Civ. P. 23(b)(3) predominance inquiry, discussed further below.

As to commonality, plaintiff has shown that there are questions capable of classwide resolution.

C. Typicality

"The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citing *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).

Defendant argues that plaintiff's claims are not typical of the class because the class would consist of *Brown* class members; plaintiff opted out of the *Brown* settlement so he is only typical of other proposed class members who opted out of *Brown*. Dkt. 50 At 9. The Court has already addressed that the class is not limited to those who opted out of the *Brown* settlement.

Plaintiff's claims are typical of those who were subject to the same Cardholder Agreement. *See* Dkt. 17 at 5-6. Plaintiff and other class members received activated prepaid credit cards upon their release from a detention facility, loaded with funds that were confiscated from them during their arrest and detention and were subject to fees.

Defendant asserts that CBKC made material changes to the Cardholder Agreement along with the Transaction Receipt and Prepaid Debit Cards after the Court denied CBKC's motion to compel arbitration. Dkt. 50 at 10. The Cardholder Agreement language, last updated September 30, 2024, provides under the Arbitration headline bolded and in capital letters, "USE OF YOUR CARD CONSTITUTES ACCEPTANCE OF THIS ARBITRATION INCLUDING WAIVER OF YOUR RIGHTS TO CLASS ACTION." Dkt. 51-1 at 3. The new version of the Cardholder agreement specifies:

> YOU CAN ALSO OBTAIN ACCESS TO YOUR FUNDS AT NO CHARGE TO YOU FROM US IF YOU COMPLETE EITHER OF THE FOLLOWING: (A) TRANSFERRING THE ENTIRE AMOUNT OF YOUR FUNDS TO AN EXISTING BANK ACCOUNT BY VISITING WWW.PRESTIGELOGIN.COM; OR (B) PERFORMING A BANK OVER THE COUNTER WITHDRAWL FOR THE ENTIRE AMOUNT OF YOUR FUNDS. OBTAINING ALL OF YOUR FUNDS IN THESE TWO WAYS DOES NOT CONSTITUTE "USE" OF THE CARD.

*Id*. at 2.

The amended Agreement does not state that activation of the card is acceptance but informs individuals of an opportunity to opt out of the arbitration agreement by not using the card and accessing their funds in other ways and informs the individual of a thirty-day grace period to do so before the deduction of fees would begin. Dkt. 51-1 at 2.

In *Reichert v. Rapid Investments, Inc.,* 56 F.4th 1220, (9th Cir. 2022), the Ninth Circuit determined that use of the card did not constitute mutual assent. In that case, maintenance fees of $2.50 per week began to deduct after three days. *Reichert*, 56 F.4th at 1225. The Court concluded "[t]he financial penalties of 'rejecting' the benefit in this circumstance, coupled with a lack of established communication with Rapid and a compressed timeline in which to act, make the opportunity available to Moyer to reject

the benefit unreasonable, precluding an inference of assent through his use of the card." *Id*. at 1230-31.

The amended Cardholder agreement is distinguishable from the agreement in *Reichert*, and instead resembles the agreement in *Cain v. JPay, LLC*, 23-55271, 2023 WL 8621977 (9th Cir. Dec. 13, 2023), in which the plaintiff had thirty days to reject the Cardholder Agreement by removing his funds for the card or requesting a fee before he would begin to incur a $3.00 monthly service fee. In that case, the Ninth Circuit determined that the plaintiff, who continuously used his card for debit transactions, had accepted the offer in the cardholder agreement and, as such, was bound by an agreement to arbitrate. *Cain*, 2023 WL 8621977, at *1.

Because the Cardholder Agreement that accompanied the card plaintiff received conditions acceptance on <u>activation</u> of the card, he is not representative of individuals who received the amended Cardholder Agreement that conditions acceptance on <u>use</u> of the card. *Compare* Dkt. 17 at 5-6 *with* Dkt. 51-1 at 2-3.

Other district courts in this Circuit, relying on *Avilez v. Pinkerton Gov't Servs.*, Inc. 596 F. App'x 579 (9th Cir. 2015) have determined that plaintiffs who had not signed an arbitration agreement or class action agreement could not represent a class of those who did. *See Valencia v. VF Outdoor, LLC*, 2021 WL 5154161, at *4 (E.D. Cal. Nov. 5, 2021) (collecting cases) *report and recommendation adopted*, 2021 WL 5811932 (E.D. Cal. Dec. 7, 2021). In *Avliez*, the Ninth Circuit remanded for an entry of a revised class certification order, holding that the district court abused its discretion by certifying classes and subclasses that included individuals who signed class action waivers because the named plaintiff did not sign such a waiver and thus those who had signed

ORDER ON PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION - 10

the waivers had potential defenses that the named plaintiff would be unable to argue on their behalf. *Avilez v. Pinkerton Gov't Servs.*, Inc. 596 F. App'x at 579. Accordingly, the named plaintiff was not an adequate representative of these individuals and her claim lacked typicality. *Id*.

In this case, there is no question that Mr. Rutherford's claim is typical of those who received the same agreement as he did; yet plaintiff's claim is not typical of those who received the amended cardholder agreement.

### D. Adequacy

"Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Defendant argues that plaintiff is not an adequate class representative because he opted out of *Brown* and most class members did not; and defendant contends that those who are part of the post-*Brown* settlement were subject to a different Cardholder Agreement. Dkt. 50 at 10. As discussed above, because plaintiff is not subject to the arbitration agreement, he is not an adequate representative of those who are subject to it. That said, plaintiff's opting out of *Brown* does not lead to the conclusion he would be an inadequate representative of those who did not opt-out.

Counsel for plaintiff has presented substantial information about their adequacy based on extensive experience with class actions including many similar cases involving release cards. Dkt. 49. Counsel do not have any conflict of interest with other class members. *Id*. at 5. Plaintiff also states that he is committed to serving as a class

representative and has no known conflicts of interest with the proposed class or subclass. Dkt. 48 at 2. Plaintiff is an adequate representative of those who received a cardholder agreement that did not include the amended language in the cardholder agreement dated September 30, 2024.

### 2. Rule 23(b)(3)

A class action is appropriate when,

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

A. Predominance

Questions of law common to class members predominate. Plaintiff's allegations, that individuals released from detention were issued activated, unsolicited cards subject to fees, are common to the class and raise uniform questions about defendants liability under EFTA, the WCPA, and common law questions of conversion and unjust enrichment.

Defendant argues that common issues do not predominate because the Court will be required to conduct individualized inquiries into whether class members requested a prepaid debit card. Dkt. 50 at 11. Defendant does not explain how the determination of whether individuals requested a card would predominate over the questions common to the class. Regarding a written request, the Court already addressed this in the Order denying the motion to compel arbitration. *See* Dkt. 32.

ORDER ON PLAINTIFF'S MOTION FOR CLASS CERTIFICATION - 12

B. Superiority

To determine whether a class action is superior the court considers:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)

A class action is the superior method of resolving these disputes. Here the cost of individually litigating the claims is likely prohibitive given that this litigation concerns the funds confiscated from individuals as part of their arrest and detention.

Defendant again makes an argument premised on the *Brown* case which the Court will not address because it has already determined that this case is not precluded by *Brown* because the cases concern different defendants and thus the claims here could not have been brought in *Brown*. *See* Dkt. 46.

Concentrating the litigation in this forum is appropriate given that the class representative lives in Washington and the subclass involves only Washington residents.

## CONCLUSION

For the reasons stated herein, the Court GRANTS in part and DENIES in part plaintiff's motion (Dkt. 47). It is Ordered as follows:

(1) Chris R. Youtz, Richard E. Spoonemore, and Sirianni Youtz Spoonemore Hamburger PLLC are hereby appointed as class counsel;

(2) The Court adopts the following class definitions:

  a. All persons in the United States who, at any time between April 17, 2023 and September 29, 2024 were: (1) taken into custody at a jail correctional facility, detainment center, or any other law enforcement

facility; (2) entitled to the return of money either confiscated from them and/or remaining in their inmate accounts when they were released from the facility, which was loaded or otherwise transferred to a prepaid debit card without their permission; (3) issued that prepaid debit card that does not include the cardholder agreement language of the amendment dated September 30, 2024, by Central Bank of Kansas City to pay the money owed to them; (4) incurred fees or other charges on such card(s); and (5) did not file a claim and receive an individual monetary recovery from the case captioned *Brown v. Stored Value Cards, et al.*, United States District Court for the District or Oregon, Cause No. 3:15-cv-01370-MO.

b. All persons who, at any time between April 17, 2020 and September 29, 2024 were: (1) taken into custody at a jail correctional facility, detainment center, or any other law enforcement facility located in the state of Washington; (2) entitled to the return of money either confiscated from them and/or remaining in their inmate accounts when they were released from the facility, which was loaded or otherwise transferred to a prepaid debit card without their permission; (3) issued that prepaid debit card that does not include the cardholder agreement language of the amendment dated September 30, 2024, by Central Bank of Kansas City to pay the money owed to them; (4) incurred fees or other charges on such card(s); and (5) did not file a claim and receive an individual monetary recovery from the case captioned *Brown v. Stored Value Cards, et al.*, United States District Court for the District of Oregon, Cause No. 3:15-cv-01370- MO.

Dated this 13th day of February, 2025

Theresa L. Fricke
United States Magistrate Judge

ORDER ON PLAINTIFF'S MOTION FOR CLASS CERTIFICATION - 14