1

2

3

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SAMUEL C. RUTHERFORD, III,<br><br>                    Plaintiff,<br>        v.<br><br>CENTRAL BANK OF KANSAS CITY,<br><br>                    Defendant. | Case No. 3:24-cv-05299-TLF<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

Plaintiff Samuel C. Rutherford III brought this class action suit against Central Bank of Kansas City ("CBKC") to recover damages for prepaid debit card fees charged to persons released from Pierce County Jail. Plaintiff alleges CBKC violated the Electronic Transfer Fund Act ("EFTA") when it issued unsolicited debit cards and charged fees that plaintiff did not agree to. Plaintiff further alleges violations of the Washington Consumer Protection Act ("WCPA") and contends defendant is liable for conversion and unjust enrichment under Washington state law. Dkt. 1, Complaint.

Defendant CBKC moves for summary judgment. Dkt. 62. The Court held oral argument on May 20, 2025. Dkt. 70.

As explained below, the Court DENIS CBKC's summary judgment motion on plaintiff's claim under 15 U.S.C. 1693i and his Washington state law claims. The Court GRANTS CBKC's motion for summary judgment on plaintiff's claim under 15 U.S.C. 1693l-1.

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
- 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

I.     BACKGROUND

The following is undisputed unless otherwise noted.

Pierce County Jail confiscates cash from inmates and holds their funds in an inmate trust account. Dkt. 16, Declaration of Brad D. Golden, at ¶4-5. Upon being released from custody, the balance of a releasee's funds is returned to the individual upon their release from custody. *Id.*

**A. Numi and CBKC**

Stored Value Cards, Inc., d/b/a Numi Financial ("Numi") contracts with a variety of companies, including commissary, telecom, and software companies, or directly with detention facilities to provide prepaid debit cards to detention facilities. *Id.* at ¶3. The prepaid card programs are used by detention facilities to return inmate trust funds to inmates upon their release from jail. *Id.*

Numi provides the Prestige Prepaid MasterCard (the "prepaid card") to incarcerated individuals at the Pierce County Jail upon their release. *Id.* at ¶¶ 2-3. Numi partnered with CBKC to execute and manage the prepaid debit card program used by the Pierce County Jail. *Id.* at ¶¶ 2-3, 5.

Numi requires the facilities it partners with to require inmates to sign a receipt requesting the card. Dkt. *Id.* at ¶5-6; Exhibit 3. Facilities are also required to provide a Cardholder Agreement and prepaid debit card to released inmates. *Id.*

The Cardholder Agreement begins with a Fee Schedule. Dkt. 17, Declaration of Lawrence Taft, Exhibit 1. Users are notified that the Card Grace Period is thirty (30) days and a monthly fee of $5.95 is assessed 40 days after the card is issued. *Id.*

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
- 2

1   After the Fee Schedule, the first sentence of the Cardholder Agreement states

2   bolded and in all caps: "NOTICE: THIS AGREEMENT REQUIRES ALL DISPUTES BE

3   RESOLVED BY WAY OF BINDING ARBITRATION UNLESS YOU OPT OUT AS

4   DETAILED IN THE ARBITRATION SECTION BELOW." *Id*. Directly below this, the

5   Cardholder Agreement states: YOU CAN ALSO OBTAIN ACCESS TO YOUR FUNDS

6   AT NO CHARGE TO YOU FROM US IF YOU COMPLETE EITHER OF THE

7   FOLLOWING" (A) TRANSFERRING THE ENTIRE AMOUNT OF YOUR FUNDS TO AN

8   EXISTING BANK ACCOUNT BY VISITING WWW.PRESTIGELOGIN.COM; OR (B)

9   PERFORMING A BANK OVER THE COUNTER WITHDRAWAL FOR THE ENTIRE

10  AMOUNT OF YOUR FUNDS. *Id*.

11  Under "About the Card," the Cardholder Agreement provides, in part:

12  The Card has been provided pursuant to the Prestige Inmate Release
Card Program. The Card is a prepaid card. The Card is not a credit card.

13  The Card is not a gift card, nor is it intended to be used for gifting
purposes. The Card is not a checking or savings account. You will not

14  receive any interest on your funds in your Card Account. There is no credit
line associated with your Card. Your Card cannot be redeemed for cash.

15  *Id*.

16  With respect to adding funds to the prepaid card, the Cardholder Agreement states:

17  Adding Funds ("Loading") to Your Card Account. Adding funds is referred

18  to as "Loading." The card is reloadable. Funds can be added to the Card
by the correctional facility providing you with your Card at any time.

19  Subject to Federal regulations, You may add funds to the Card at
participating Mastercard rePower retailers. Cash reload functionality is

20  limited to a single load. This single load may be up to a maximum of $750,
reload network may have additional limits. Visit the "Reload" section at

21  www.prestigelogin.com to learn more about this feature.

22  *Id*.

23

24

25  ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
- 3

1

**B. Plaintiff's Receipt of a Release Card**

2      Plaintiff Samuel C. Rutherford III was incarcerated in the Pierce County Jail and was

3   released on April 22, 2023. Dkt. 23, Declaration of Samuel C. Rutherford, at 1

4   ("Rutherford Decl."). At the time of booking, he had approximately $300 cash, which

5   was confiscated and deposited into an account with CBKC; additional money sent to

6   him by others while he was incarcerated was also deposited into this account. *Id.* Upon

7   release, plaintiff's money was returned to him on a CBKC prepaid debit card, the Numi

8   Prestige Prepaid Mastercard. *Id.* at 2. Plaintiff alleges he requested the return of his

9   money in cash but was told that the prepaid debit card was the only way for his funds to

10  be returned to him. *Id.* at 2.

11     The Transaction Receipt stated as follows:

12         I hereby authorize and request the return of my funds on the Numi
           Prestige Prepaid Mastercard and confirm receipt of the Cardholder
13         Agreement and Fee Schedule. I understand the Card is active and there
           may be fees associated with the use of the Card. These fees are listed in
14         the Cardholder Agreement and Fee Schedule. I further understand that I
           may choose not to use the Card and can request a check be mailed to me
15         in accordance with the terms set forth in the Cardholder Agreement and
           Fee Schedule.
16
    Dkt. 16, Golden Decl., Ex. 3 at 14.
17
       After he signed a form authorizing return of his funds on the prepaid card, plaintiff
18
    was handed a validated prepaid debit card, and a folded Cardholder Agreement. Dkt.
19
    23, Rutherford Decl., at 2. His name had already been written on the signature block on
20
    the back of the prepaid MasterCard, by someone other than himself. Dkt. 23, Rutherford
21
    Decl., at 2 and Ex. A at 6. Under the signature block the card stated, "By accepting,
22
    signing or using this Card, you agree to the terms of the Cardholder Agreement." Dkt.
23
    23, Ex. A at 6; *see also* Dkt. 16, Golden Decl., Ex. 1 at 6.
24

25
ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
- 4

1    After his release, plaintiff withdrew $494.00, using a cash machine, from the prepaid

2    debit MasterCard that had $500.49 loaded on to it. Dkt. 16, Golden Decl., Ex. 4, at 16.

3              II.        MOTION FOR SUMMARY JUDGMENT

4         Summary judgment is proper when the pleadings, discovery, and affidavits "show

5    that there is no genuine issue as to any material fact and that the moving party is

6    entitled to a judgment as a matter of law." Federal Rule of Civil Procedure (Fed. R. Civ.

7    P.) 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those

8    which may affect the outcome. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

9    (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a

10   reasonable jury to return a verdict for the nonmoving party. *Id.*

11        When applying these standards, the Court must draw all reasonable inferences

12   in favor of the non-moving party. *United States v. Johnson Controls, Inc.*, 457 F.3d

13   1009, 1013 (9th Cir. 2006). The moving party can carry its initial burden by producing

14   affirmative evidence that negates an essential element of the nonmovant's case, or by

15   establishing that the nonmovant lacks the quantum of evidence needed to satisfy his

16   burden of persuasion at trial. *Block v. City of Los Angeles*, 253 F.3d 410, 416 (9th Cir.

17   2001).

18        Once this has occurred, the procedural burden shifts to the party opposing

19   summary judgment. That party must go beyond the pleadings and affirmatively establish

20   a genuine issue on the merits of their case. Fed.R.Civ.P. 56(e). The nonmoving party

21   must do more than just deny the veracity of everything offered or show a mere

22   "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith*

23

24

25   ORDER GRANTING IN PART AND DENYING IN PART
     DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
     - 5

1    *Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence is

2    insufficient to create a genuine factual dispute. *Anderson*, 477 U.S. at 252.

3         The nonmoving party must demonstrate that the disputed fact is material, and

4    that the dispute is genuine. *Anderson*, 477 U.S. at 248-49. The nonmoving party's

5    failure of proof "renders all other facts immaterial," creating no genuine issue of fact and

6    thereby entitling the moving party to the summary judgment it sought. *Celotex Corp.*,

7    477 U.S. at 323. Even so, if there are "any genuine factual issues that properly can be

8    resolved only by a finder of fact because they may reasonably be resolved in favor of

9    either party," then summary judgment may not be granted. *Anderson*, 477 U.S. at 250.

10   **A.  Plaintiff's Claims under EFTA**

11        Plaintiff alleges the inmate prepaid debit card program violates two EFTA

12   provisions: 15 U.S.C. 1693i, which prohibits the unauthorized issuance of debit cards,

13   and 15 U.S.C. § 1693l-1, which prohibits general-use prepaid card service fees.

14        **1.  Unauthorized Issuance (15 U.S.C. 1693(i))**

15   Plaintiff brings a claim under 15 U.S.C. § 1693i. Section 1693i(a) provides:

16        [N]o person may issue to a consumer any card, code, or other means of
17        access to such consumer's account for the purpose of initiating an
        electronic fund transfer other than
18             (1) in response to a request or application therefor; or

19             (2) as a renewal of, or in substitution for, an accepted card, code, or
20        other means of access, whether issued by the initial issuer or a
        successor.

21

22

23

24

25   ORDER GRANTING IN PART AND DENYING IN PART
     DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
     - 6

Under 1693i(b), there is an exception:

Notwithstanding the provisions of subsection (a), a person may distribute to a consumer on an unsolicited basis a card, code, or other means of access for use in initiating an electronic fund transfer from such consumer's account, if—

    (1)  such card, code, or other means of access is not validated;

    (2)  such distribution is accompanied by a complete disclosure, in accordance with section 1693c of this title, of the consumer's rights and liabilities which will apply if such card, code, or other means of access is validated;

    (3)  such distribution is accompanied by a clear explanation, in accordance with regulations of the Bureau, that such card, code, or other means of access is not validated and how the consumer may dispose of such code, card, or other means of access if validation is not desired; and

    (4)  such card, code, or other means of access is validated only in response to a request or application from the consumer, upon verification of the consumer's identity.

For purposes of Section 1693i(b), "a card, code, or other means of access is validated when it may be used to initiate an electronic funds transfer." 15 U.S.C. 1693i(c).

CBKC states it did not violate 15 U.S.C. 1693(i) because plaintiff only received the prepaid card after requesting it upon signing the Transaction Receipt. Plaintiff, on the other hand, argues even though he signed the Transaction Receipt, the card was provided to him on an unsolicited basis and was already validated upon receipt; therefore, CBKC violated 1693i(b).

To evaluate whether plaintiff received the prepaid card upon a "request" or on an "unsolicited basis", the Court considers the terms "request" and "unsolicited" under EFTA.

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
- 7

In interpreting statutes, the Court construes Congress's intent, and doing so requires us to "begin, as always, with the language of the statute." *Duncan v. Walker,* 533 U.S. 167, 172 (2001); *accord Carson Harbor Vill., Ltd. v. Unocal Corp.,* 270 F.3d 863, 877 (9th Cir.2001) (*Carson Harbor I*) (en banc). The Court must apply the fundamental precept of statutory construction that, unless otherwise defined, "words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States,* 444 U.S. 37, 42 (1979). But "[w]hen a statute includes an explicit definition, we must follow that definition, even if it varies from that term's ordinary meaning." *Stenberg v. Carhart,* 530 U.S. 914, 942 (2000); *accord Carson Harbor I,* 270 F.3d at 878.

Words necessarily derive meaning from their context, therefore, "[i]nterpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." *Dolan v. U.S. Postal Serv.,* 546 U.S. 481, 486 (2006); *see also Carson Harbor I,* 270 F.3d at 877 ("We look first to the plain language of the statute, construing the provisions of the entire law, including its object and policy, to ascertain the intent of Congress." (citation and quotes omitted)). The Court should not follow a literal interpretation of a statute that would thwart the overall statutory scheme or lead to an absurd result. *Wilshire Westwood Assocs. v. Atl. Richfield Corp.,* 881 F.2d 801, 804 (9th Cir.1989).

The terms "unsolicited" and "request" are not defined in the EFTA. Because these terms are not defined, the Court first looks at the plain meaning of the text. "When determining the plain meaning of language, we may consult dictionary definitions." *Af–*

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
- 8

1   *Cap, Inc. v. Chevron Overseas (Congo) Ltd.,* 475 F.3d 1080, 1088 (9th Cir.2007). We

2   may rely on *Black's Law Dictionary* "to determine the common sense meaning of

3   statutory language." *Ariz. Health Care Cost Containment Sys. v. McClellan,* 508 F.3d

4   1243, 1250 n. 9 (9th Cir.2007). According to Black's Law Dictionary, "unsolicited" is

5   defined as, "something not asked for nor requested." And "requested" is defined as "[a]n

6   asking or petition; the expression of a desire to some person for something to be

7   granted or done; particularly for the payment of a debt or performance of a contract."

8       The Court next looks at the definitions of these terms in conjunction with the

9   Congressional intent of EFTA.

10      In enacting the EFTA, Congress recognized that "[m]ost consumers are not

11  aware of the risks they run in using EFT services." 124 Cong. Rec. 25,731 (1978), RJN.

12  Congress enacted the EFTA "to provide a basic framework establishing the rights,

13  liabilities, and responsibilities of participants in electronic fund and remittance transfer

14  systems" with the "primary objective of...the provision of individual consumer rights." 15

15  U.S.C. § 1693(b). *See also Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 572 (9th

16  Cir. 2020). This includes the requirement of "insur[ing] that consumers are not forced to

17  use EFT." 124 Cong. Rec. 25,733, RJN. Consumers should "use electronic fund

18  services only out of voluntary choice, not by force." H.R. Rep. No. 95-1315, at 12

19  (1978), RJN, Dkt. No. 289-4 at 22.

20      The Committee on Banking, Finance and Urban Affairs feared that, absent a

21  prohibition against the compulsory use of EFT, "institutions, creditors, or the

22  Government might resort to a variety of ploys to coerce consumers to use electronic

23  fund transfer services[.]" *Id.*

24

25  ORDER GRANTING IN PART AND DENYING IN PART
    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
    - 9

The statute covers a range of electronic money transfers and "subjects them to a litany of procedural requirements designed to protect consumers from transactions made in error or without their consent." *Wike v. Vertrue, Inc.*, 566 F.3d 590, 592 (6th Cir. 2009) (citing 15 U.S.C. §§ 1693a (6), 1693b–1693f); *see also Curtis v. Propel Prop. Tax Funding, LLC*, 915 F.3d 234, 239 (4th Cir. 2019) (EFTA is a "remedial consumer protection statute" which we "read liberally to achieve" the goal of protecting consumers). "There are several provisions in EFTA that bolster the conclusion that the purpose of the Act is to benefit consumers, even at the expense of financial institutions." *Michigan First Credit Union v. T-Mobile USA, Inc.*, 108 F.4th 421, 426 (6th Cir. 2024).

Congress's priority in enacting EFTA was to protect consumers. In this case, plaintiff does not argue that he refused to sign the Transaction Receipt, but he asserts that he was not given any real choice and felt compelled to accept the prepaid card. Given that he was being discharged from jail, i.e., "from a condition of absence of liberty of choice" and was provided his money back only in the form of the prepaid debit card, a reasonable jury could find that plaintiff did not believe he had a meaningful choice in accepting the prepaid card. *See Regan v. Stored Value Cards, Inc.*, 85 F. Supp. 3d 1357, 1364 (N.D. Ga.), *aff'd sub nom. Reagan v. Stored Value Cards, Inc.*, 608 F. App'x 895 (11th Cir. 2015). This appears to fit within the activities or tactics from which Congress intended the EFTA to protect consumers.

The Court interprets the terms "request" as intended by Congress under EFTA as an individual asking and expressing a desire, by knowing and voluntary choice, to obtain a card; "unsolicited" would be a situation where the individual did not ask or express a desire by knowing and voluntary choice. In this case, plaintiff asserts he did

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
- 10

not ask the bank to provide him with a card nor did he request an application that he could use to apply for the card. A reasonable jury could find the prepaid card was provided to him in an unsolicited manner – not by request -- and that it was presented to him under circumstances that a reasonable jury could determine plaintiff understood the application for a card as his only option of receiving his funds back.

There is no dispute about whether the prepaid card was validated upon receipt – the parties agree it was already validated when it was given to plaintiff. Thus, because the Court finds the statutory language should be interpreted consistent with plain meaning and Congressional intent as described above and drawing all reasonable inferences in favor of the non-moving party, there is a genuine dispute of material fact for a jury to decide whether the card was requested and solicited or was unrequested and unsolicited. Therefore, Defendant's summary judgment motion is DENIED, and it is jury question whether the defendant's card was provided in a manner prohibited under 15 U.S.C. 1693i(b)(1).

### i.     General Use Prepaid Card (5 U.S.C. § 1693l-1)

Defendants also move for summary judgment on Plaintiff's EFTA claim under 15 U.S.C. § 1693l-1, which prohibits the imposition of "service fees" on general-use prepaid cards.

Pursuant to 15 U.S.C. § 1693l-1(a)(2)(D)(ii), the term "general-use prepaid card" does not include a plastic card that is "reloadable and not marketed or labeled as a gift card or gift certificate."

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
- 11

1    A "general-use prepaid card" is defined under Section 1693l-1(a)(2)(A) as

2 follows:

3    The term "general-use prepaid card" means a card or other payment code or

4 device that is—

5    (i)    redeemable at multiple, unaffiliated merchants or service providers, or

6        automated teller machines;

7    (ii)    issued in a requested amount, whether or not that amount may, at the

8        option of the issuer, be increased in value or reloaded if requested by the

9        holder;

10    (iii)    purchased or loaded on a prepaid basis; and

11    (iv)    honored, upon presentation, by merchants for goods or services, or at

12        automated teller machines.

13    The only fees involving general-use prepaid cards that are expressly prohibited

14 by the EFTA are a "dormancy fee, inactivity charge or fee, or a service fee." 15 U.S.C. §

15 1693l-1(b)(1). A "service fee" is defined as "a periodic fee, charge, or penalty for holding

16 or use of a gift certificate, store gift card, or general-use prepaid card," but does not

17 include "a one-time initial issuance fee." 15 U.S.C. § 1693l-1(a)(3)(A) & (B). Other fees

18 are permissible but must be disclosed as required by section 1693c.

19    A card, code, or other device is "reloadable" if the terms and conditions of the

20 agreement permit funds to be added to the card, code, or other device after the initial

21 purchase or issuance. A card, code, or other device is not "reloadable" merely because

22 the issuer or processor is technically able to add functionality that would otherwise

23 enable the card, code, or other device to be reloaded. 12 C.F.R. § Pt. 205, Supp. I.

24

25 ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
- 12

CBKC argues the prepaid debit card distributed to plaintiff is exempt from the service fee prohibition because these cards are: (1) reloadable *and* (2) are not marked or labeled as a gift card or gift certificate.

The Cardholder Agreement provides:

Adding Funds ("Loading") to Your Card Account. Adding funds is referred to as "Loading." *The card is reloadable*. Funds can be added to the Card by the correctional facility providing you with your Card at any time. Subject to Federal regulations, You may add funds to the Card at participating Mastercard rePower retailers. *Cash reload functionality is limited to a single load*. This single load may be up to a maximum of $750, reload network may have additional limits. Visit the "Reload" section at www.prestigelogin.com to learn more about this feature.

Dkt. 17 at Exhibit 1 (emphasis added).

The Cardholder Agreement directs customers to visit "prestigelogin.com." On that link, customers are informed they can transfer funds from their Prestige Prepaid MasterCard to a "upgraded, personalized, and reloadable Forefront Elite Prepaid Mastercard."

Plaintiff argues a "reloadable card" is a "category of prepaid cards that can be continuously reloaded after it was issued." Dkt. 66 at 8. Plaintiff does not cite authority. The Cardholder Agreement states the plaintiff's prepaid debit card was reloadable, even though it was reloadable only one time.

Having the option of upgrading the Prestige Prepaid MasterCard to receive other benefits, including unlimited opportunities to reload the card, does not lead to the conclusion that the Prestige Prepaid MasterCard is not reloadable when it was issued.

The Court finds there is no genuine dispute of material fact that plaintiff's card was reloadable.

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
- 13

1   The Court next addresses whether the prepaid card was "not marked or

2   labeled as a gift card or gift certificate."

3   In the section entitled, "About the Card," the Cardholder Agreement states: "The

4   card is a prepaid card. It is not a credit card. The card is not a gift card, nor is it intended

5   to be used for gifting purposes." Dkt. 17 at Exhibit 1.

6   In plaintiff's response to CBKC's summary judgment motion, he does not provide

7   any evidence that his prepaid card was a gift card or gift certificate. Because CBKC

8   satisfied their initial burden that the prepaid card was not a gift card of gift certificate,

9   and plaintiff failed to produce affirmative evidence to create a genuine dispute of

10  material fact on this issue, the Court finds the prepaid card was not marked or labeled

11  as a gift card or gift certificate.

12  Because there is no genuine dispute of material fact that the card was reloadable

13  and not marked or labeled as a gift card or gift certificate, the service fees imposed

14  were permissible under 15 U.S.C. 1693l-1; therefore, the Court GRANTS CBKC's

15  summary judgment motion under 15 U.S.C. 1693l-1.

16  ### 2. Plaintiff's State Law Claims

17  Defendant moves for summary judgment on plaintiff's claims under the

18  Washington Consumer Protection Act, unjust enrichment, and conversion under

19  Washington state law.

20  ### i. WCPA

21  To prevail on a Washington CPA action, the plaintiff must prove '(1) [an] unfair or

22  deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact;

23  (4) injury to plaintiff in his or her business or property; (5) causation.'" *Klem v. Wash.*

24

25  ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
- 14

1   *Mut. Bank*, 176 Wash.2d 771, 782 (2013) (alteration in original) (quoting *Hangman*

2   *Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 780 (1986)).

3          The parties agree plaintiff's WCPA claim is derivative of plaintiff's claims under

4   EFTA. CBKC argues plaintiff failed to establish CBKC acted unfairly or deceptively by

5   providing "unsolicited" cards with service fees. CBKC further argues plaintiff cannot

6   establish proximate cause.

7          As the Court discussed in its analysis of plaintiff's EFTA claim under 1693i,

8   CBKC failed to establish there is no genuine dispute of material fact as to whether

9   prepaid cards were "requested" and not unsolicited. Thus, for the same reasons, under

10  the Washington Consumer Protection Act, a reasonable jury could find the distribution

11  of the prepaid card to plaintiff was an unfair or deceptive practice, and that the harm to

12  plaintiff was proximately caused by the defendant.

13         Further, although the Court concluded a prepaid card with the characteristics of

14  the card that plaintiff received may, under the EFTA, impose service fees, there is a

15  genuine dispute of material fact about whether the amount of fees imposed was unfair.

16         For these reasons, the Court DENIES defendant's motion for summary judgment

17  on the Washington Consumer Protection Act unfair or deceptive practice claim.

18         **ii.    Unjust Enrichment**

19         "Unjust enrichment is the method of recovery for the value of the benefit retained

20  absent any contractual relationship because notions of fairness and justice require it."

21  *Young v. Young,* 164 Wash.2d 477, 484 (2008). A party claiming unjust enrichment

22  must prove three elements: "(1) the defendant receive[d] a benefit, (2) the received

23

24

25  ORDER GRANTING IN PART AND DENYING IN PART
    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
    - 15

1   benefit is at the plaintiff's expense, and (3) the circumstances ma[d]e it unjust for the

2   defendant to retain the benefit without payment." *Young,* 164 Wash.2d at 484–85.

3       Plaintiff states the fees imposed by CBKC were unlawful.

4       The first two elements are met; it is undisputed that CBKC received a benefit in

5   the form of fees, which was at plaintiff's expense since the fees were taken out of his

6   own funds. The third element of unjust enrichment turns on whether the fees were

7   reasonable. If the fees were a fair approximation of the cost of benefits supplied, then it

8   would not be unjust to allow CBKC to keep them.

9       On the current record on summary judgment, defendant has not shown the

10  absence of a genuine dispute of material fact; a reasonable jury could determine that

11  the fees were too high. And if the fees were too high, it would be unjust to allow CBKC

12  to keep any amount exceeding the cost of their services.

13      Accordingly, defendant's motion for summary judgment is DENIED as to

14  plaintiff's claim of unjust enrichment.

15  **iii.   Conversion**

16      Conversion involves three elements: (1) willful interference with chattel belonging

17  to the plaintiff, (2) by either taking or unlawful retention, and (3) thereby depriving the

18  owner of possession. *See Judkins v. Sadler-Mac Neil*, 61 Wash.2d 1, 3 (1962) (quoting

19  *Wilson v. Wilson*, 53 Wash.2d 13, 16 (1958)).

20      Plaintiff argues CBKC had no lawful basis to seize plaintiff's money, no authority

21  to charge him fees, and no consent from plaintiff to do so.

22      As the Court discussed in its analysis of plaintiff's claim under 15 U.S.C. 1693i, a

23  reasonable jury could find the prepaid card was unsolicited and not requested by

24

25  ORDER GRANTING IN PART AND DENYING IN PART
    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
    - 16

plaintiff within the meaning of EFTA. Thus, even though some of plaintiff's funds were returned when plaintiff withdrew funds from an ATM, a reasonable jury could find CBKC interfered with how plaintiff received plaintiff's funds by returning the funds on a prepaid card. Further, a portion of plaintiff's money was taken (and not returned) in the form of fees.

Drawing all reasonable inferences from the evidence in favor of plaintiff, the non-moving party, a rational jury could find plaintiff did not agree to have his funds returned to him on a prepaid card with service fees. Thus, summary judgment is DENIED as to plaintiff's conversion claim.

III.    CONCLUSION

For the reasons discussed, the Court ORDERS:

1.  CBKC's motion for summary judgment on plaintiff's claim under 15 U.S.C. 1693i is DENIED;

2.  CBKC's motion for summary judgment on plaintiff's claim under 15 U.S.C. 1693l-1 is GRANTED; and

3.  CBKC's motion for summary judgment on plaintiff's claims under Washington state law are DENIED.

Dated this 24th day of June, 2025.

*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge