1

2

3

4                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
5                              AT TACOMA

6    SAMUEL C. RUTHERFORD, III,
                                              Case No. 3:24-cv-05299-TLF
7                        Plaintiff,
                                              ORDER ON PLAINTIFF'S MOTION
8            v.                               TO COMPEL (DKT. 76)

9    CENTRAL BANK OF KANSAS CITY,

                         Defendant.
10

11        Plaintiff Samuel Rutherford III seeks an order compelling Defendant Central Bank

12   of Kansas City ("CBKC") to produce certain categories of documents and responses to

13   plaintiff's First Set of Interrogatories and First Request for Production of Documents,

14   and further, ordering defendant to pay plaintiff's attorney fees incident to this motion.

15   Dkt. 76.

16        CBKC claims they have responded to plaintiff's interrogatories and document

17   requests that are in their own possession; any requests that require CBKC to produce

18   documents on behalf of third parties are not appropriate because those documents are

19   not in their custody or control and many of plaintiff's other discovery requests are

20   irrelevant to the issues that remain in this case.[1]

21

22   _____

     [1] CBKC further states the Court should deny plaintiff's motion to compel for failure to comply with the
23   Standing Order. The Order defendant refers to is a Sample Order Setting Forth Court Procedures that is
     available on the undersigned's judicial website (Chief Magistrate Judge Theresa L. Fricke Chambers |
     Western District of Washington | United States District Court). It is a sample order intended to provide
24   parties with an example of an order setting forth certain procedures that may be entered into a civil case;

25

1    Plaintiff's motion to compel is GRANTED in part and DENIED in part.

2    Plaintiff's motion for attorney fees is DENIED.

3    <u>BACKGROUND</u>

4    Plaintiff brought this class action suit against CBKC to recover damages for

5    prepaid debit card fees charged to persons released from Pierce County Jail. Plaintiff

6    alleges CBKC violated the Electronic Transfer Fund Act ("EFTA") when it issued

7    unsolicited debit cards and charged fees that plaintiff did not agree to. Plaintiff further

8    alleges violations of the Washington Consumer Protection Act ("WCPA") and contends

9    defendant is liable for conversion and unjust enrichment under Washington state law.

10   Dkt. 1, Complaint.

11   Plaintiff served interrogatories and document requests on CBKC on February 19,

12   2025. Dkt. 78, Declaration of Chris R. Youtz, at ¶2. CBKC responded to plaintiff's

13   discovery requests on April 21, 2025. *Id*. ¶4. The parties engaged in a discovery

14   conference and exchanged several emails. On June 23, 2025, plaintiff's counsel had a

15   telephone conference with CBKC's counsel in an attempt to resolve their discovery

16   disputes before filing the instant motion to compel. *Id*. ¶28.

17   On June 24, 2025, the Court denied CBKC's summary judgment motion on

18   plaintiff's claim under 15 U.S.C. 1693i, which prohibits the unauthorized issuance of

19   debit cards, and his Washington state law claims; the Court granted CBKC 's motion for

20   summary judgment on plaintiff's claim under 15 U.S.C. 1693l-1, which prohibits general-

21   use prepaid card service fees. Dkt. 73.

22

23   ─────────────

it was not ordered by the Court in this case. Because it was not a standing order and did not become a

24   docketed order in this case, the parties are not required to comply with the sample order.

25

1

<u>LEGAL STANDARD</u>

2     The Federal Rules of Civil Procedure authorize parties to obtain discovery of any

3   nonprivileged information discoverable under Rule 26 if it is (1) relevant, and (2)

4   proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Federal Rule of Civil

5   Procedure 26(b)(1), as amended in 2015, provides that parties—

6       may obtain discovery regarding any nonprivileged matter that is relevant
        to any party's claim or defense and proportional to the needs of the case,
7       considering the importance of the issues at stake in the action, the amount
        in controversy, the parties' relative access to the information, the parties'
8       resources, the importance of the discovery in resolving the issues, and
        whether the burden or expense of the proposed discovery outweighs its
9       likely benefit.
10      *Id.*

11     Evidence must be "relevant to any party's claim or defense" to fall within the

12   scope of permissible discovery. *Id.* The 2015 amendment to Rule 26(b) deleted the

13   phrase "reasonably calculated to lead to the discovery of admissible evidence" because

14   it was often misconstrued to define the scope of discovery and had the potential to

15   "swallow any other limitation." Fed. R. Civ. P. 26(b)(1) advisory committee notes to 2015

16   amendment. *See also San Diego Unified Port Dist. v. Nat'l Union Fire Ins. Co. of*

17   *Pittsburg, PA*, No. 15CV1401-BEN-MDD, 2017 WL 3877732, at *1 (S.D. Cal. Sept. 5,

18   2017). The amendment replaced this phrase with the statement that information "need

19   not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1) advisory

20   committee notes to 2015 amendment.

21     Information must also be "proportional to the needs of the case" to fall within the

22   scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). When analyzing the

23   proportionality of a party's discovery requests, a court should consider the importance of

24

25

ORDER ON PLAINTIFF'S MOTION TO COMPEL (DKT.
76) - 3

the issues at stake in the action, the amount in controversy, the parties' relative access

to the information, the parties' resources, the importance of the discovery in resolving

the issues, and whether the burden or expense of the proposed discovery outweighs its

likely benefit. *Id.*

Federal Rule of Civil Procedure 33 provides that a party may serve on any other

party interrogatories that relate to any matter within the scope of discovery defined in

Rule 26(b). Fed. R. Civ. P. 33(a)(2). Under Federal Rule of Civil Procedure 34, a party

may request the production of documents within the scope of Rule 26(b). Fed. R. Civ. P.

34(a).

When a party objects to an interrogatory or request for production, that objection

can neither be a boilerplate objection nor a blanket refusal. *See Burlington N. & Santa*

*Fe Ry. Co. v. U.S. Dist. Court for the Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir.

2005).

If a party fails to answer an interrogatory or produce documents, or if the

response provided is evasive or incomplete, the propounding party may bring a motion

to compel. *See* Fed. R. Civ. P. 37(a). The party opposing the discovery bears the

burden of resisting disclosure. *Bryant v. Armstrong*, 285 F.R.D. 596, 600 (S.D. Cal.

2012).

If a motion to compel is granted or the disclosure or requested discovery is

provided after the filing of the motion, the court must order the offending party "to pay

the movant's reasonable expenses incurred in making the motion, including attorney's

fees" unless "(i) the movant filed the motion before attempting in good faith to obtain the

disclosure or discovery without court action; (ii) the opposing party's nondisclosure,

1  response, or objection was substantially justified; or (iii) other circumstances make an

2  award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A).

3                                    <u>DISCUSSION</u>

4      Plaintiff asks the Court to compel CBKC to:

5      • Answer Interrogatories 6, 9, and 10 in full, including information available

6          from Central Payments and Numi;

7      •  Produce all documents responsive to Requests for Production (RFP) 2–5,

8          7–10, 12–23, and 25–27, including any documents and ESI in the custody

9          or control of Central Payments or Numi;

10     •  Confirm that any representation from CBKC that "no responsive

11         documents exist" encompasses documents held or controlled by Central

12         Payments and Numi; and

13     • Provide unredacted copies of all documents produced to date.

14     In reviewing the discovery requests and objections, the Court understands the

15  parties' issues to be split into three categories: (1) whether CBKC has control of certain

16  documents maintained by Numi or Central Payments; (2) whether some of plaintiff's

17  discovery requests are no longer relevant in light of the Court's summary judgment

18  Order from June 2025; and (3) whether CBKC should have to produce documents or

19  information that is already in the possession of plaintiff's counsel from the *Brown*

20  litigation.

21     The Court will discuss each category in turn.

22

23

24

25

ORDER ON PLAINTIFF'S MOTION TO COMPEL (DKT.
76) - 5

1

2

### A. Whether CBKC has control of certain documents maintained by Numi or Central Payments.

3

4

In response to several document requests of plaintiff, CBKC objected on the grounds that the information or documents are not in the possession of CBKC and could be in the possession of third parties, Numi or Central Payments. *See* Dkt. 78-3 at RFPs 2, 3, 4, 5, 7, 8, 9, 10, 11, 12, 15, 16, 19, 20, 22, 23. *See also* Dkt. 78-14.

5

6

7

"Federal courts have consistently held that documents are deemed to be within [a party's] possession, custody or control' for purposes of Rule 34 if the party has *actual* possession, custody, or control, or has the legal right to obtain the documents on demand." In *re Bankers Trust Co.,* 61 F.3d 465, 469 (6th Cir.1995); *see also United States v. Int'l Union of Petroleum and Indus. Workers, AFL–CIO,* 870 F.2d 1450, 1452 (9th Cir.1989) ( "Control is defined as the legal right to obtain documents on demand."). "The party seeking production of the documents ... bears the burden of proving that the opposing party has such control." *Id.*

8

9

10

11

12

13

14

"Control is defined as the legal right to obtain documents upon demand." *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999) (quoting *Int'l Union*, 870 F.2d at 1452); *see also Micron Tech., Inc. v. Tessera, Inc.*, No. C06-80096 MISC.JW(HRL), 2006 WL 1646133, at *1 (N.D. Cal. June 14, 2006) ("Legal right suggests an ownership interest, a binding contract, a fiduciary duty, or some other legally enforceable arrangement."). The Ninth Circuit in *Int'l Union* emphasized that proof of "theoretical control is insufficient; a showing of actual control is required." *In re Citric Acid*, 191 F.3d at 1107 (quoting *Int'l Union*, 870 F.2d at 1453-54).

15

16

17

18

19

20

21

22

In the *In re Citric Acid* case, the plaintiffs asked the court to define "control" in a manner that focuses on a party's "practical ability" to obtain requested documents. *Id.*

23

24

25

1    The Ninth Circuit rejected the argument. It is not enough that a party may have a

2    "practical ability to obtain the requested documents" from an affiliated organization,

3    because the other entity "could legally—and without breaching any contract—continue

4    to refuse to turn over such documents." *Id.* at 1108.

5          Central to the question of control "is the relationship between the party and the

6    person or entity having actual possession of the document[s]." *Allen v. Woodford*, No.

7    CV-F-05-1104 OWW LJO, 2007 WL 309945, at *2 (E.D. Cal. Jan. 30, 2007) (citing

8    *Estate of Young Through Young v. Holmes* ("*Estate of Young*"), 134 F.R.D. 291, 294 (D.

9    Nev. 1991)). "This position of control is usually the result of statute, affiliation or

10   employment." *Id.* (citing *Estate of Young*, 134 F.R.D. at 294; *In re Citric Acid*, 191 F.3d

11   at 1107); *see also TetraVue, Inc. v. St. Paul Fire & Marine Ins. Co.*, No. 14CV2021-W

12   (BLM), 2017 WL 1008788, at *4 (S.D. Cal. Mar. 15, 2017) ("Rule 34(a) enables a party

13   seeking discovery to require production of documents beyond the actual possession of

14   the opposing party if such party has retained any right or ability to influence the person

15   in whose possession the documents lie."). "The requisite relationship is one where a

16   party can order the person or entity in actual possession of the documents to release

17   them." *Thomas v. Hickman*, No. 106-CV-00215-AWI-SMS, 2007 WL 4302974, at *14

18   (E.D. Cal. Dec. 6, 2007).

19         CBKC contracts with Central Payments and Numi, separately, to pursue a

20   program to release cards to class members.

21         Central Payments helped CBKC provide oversight, supervision, and control over

22   the programs and acting as the primary point of contact for the Program Managers. Dkt.

23   79 at Exhibit 4. The relevant contract between CBKC and Central Payments is referred

24

25

1   to as the "Sponsorship Services Agreement," and was effective as of August 10, 2022.

2   Section 2.4(b) of the Agreement provides:

3       Each Party shall at all times have reasonable access to all information and
        documents related to the subject matter of this Agreement that it requires
4       to comply with Applicable Law[2] or the requirements of this Agreement,
        including any such items in the control or possession of the other Party.
5       Further, access granted to Central Payments to materials in the
        possession of any Program Managers or other Mission Critical Third Party
6       shall allow for sharing such information with Bank to the extent that such
        material is necessary for Bank to assess compliance with this Agreement
7       and Applicable Law. Bank shall make all requests for information from any
        Program Manager or MCTP through Central Payments and shall not
8       communicate directly with any Program Manager or MCTP unless
        circumventing Central Payments is required by Applicable Law or Central
9       Payments fails to exercise good faith in securing information requested by
        Bank in a timely manner.

10      *Id.* at 13.

11      This provision explicitly provides CBKC the legal right to request and obtain

12  access Central Payment's documents. CBKC's existing legal right to obtain Central

13  Payment's documents falls within the *Citric Acid* framework for "control."

14      CBKC, similarly, has a contractual relationship with Numi. Dkt. 79 at Exhibit 5.

15  Numi contracts with a variety of companies, including commissary, telecom, and

16  software companies, or directly with detention facilities to provide prepaid debit cards to

17  detention facilities. Dkt. 16, Declaration of Brad D. Golden, at ¶3. Numi provides the

18  Prestige Prepaid MasterCard (the "prepaid card") to incarcerated individuals at the

19  Pierce County Jail upon their release. *Id.* ¶¶ 2-3. Numi partnered with CBKC to execute

20

21

22

23  [2] Applicable Law is defined as: "collectively, all federal, state or other governmental statutes, codes,
    ordinances, laws, regulations, rules, guidance, written directives, orders and decrees applicable to the
    Accounts, a Program, Party, Processor, Network, Program Manager, or Mission Critical Third Party and
24  shall also include the Rules established by a Network." Dkt. 79, Exhibit 4, at 3.

25

ORDER ON PLAINTIFF'S MOTION TO COMPEL (DKT.
76) - 8

1    and manage the prepaid debit card program used by the Pierce County Jail. *Id.* ¶¶ 2-3,

2    5.

3         Under the Service Provider Agreement between Numi and CBKC, dated January

4    31, 2020, "CBKC shall have access to all information, documents, materials, Mission

5    Critical Third Parties, Non-Mission Critical Third Parties and Service Provider

6    employees it requests with regard to any activity contemplated by this Agreement or

7    material to the safe, sound, and compliant operation of the Program(s)." Dkt. 79, Exhibit

8    5, at 10. Further, the Agreement states CBKC owns the Cards, the Cardholder

9    relationship, Cardholder Data, the Programs, Required Program Disclosure Templates,

10   and Program Materials (excluding Marketing Materials). *Id.* at 10.

11        The provisions in this Agreement reflect that CBKC has the legal right to request,

12   access, and obtain Numi's documents.

13        Plaintiff elected to separately serve subpoenas on Numi and Central Payments

14   after reviewing CBKC's responses, which included CBKC's offer to consult with Numi

15   and Central Payments to see if they had responsive information and documents. Dkt. 78

16   at Exhibits 12, 13. CBKC argues that by serving these subpoenas, plaintiff was

17   "rejecting" their offer and proceeding directly with the third-parties to obtain the

18   requested information. Although plaintiff subpoenaed Numi and Central Payments, that

19   does not automatically dissolve CBKC's discovery obligations especially given that

20   these documents are within the custody or control of CBKC.

21        Plaintiff's motion to compel documents is granted, for information maintained by

22   Numi or Central Payments but within CBKC's control, under their respective contractual

23   agreements. To the extent Numi or Central Payments maintain documents that are

24

25

1  responsive to plaintiff's requests, CBKC must produce those documents within 30 days

2  of this Order. If Numi and Central Payments do not have responsive documents, CBKC

3  should so state with sufficient specificity. Boilerplate objections are not enough.

4  **B.  Whether some of plaintiff's discovery requests are no longer relevant considering the Court's Order on summary judgment**

5

6  CBKC argues some of plaintiff's requests (i.e., RFPs 2, 3, 5, 7, 8, 10, 14, 15, 17,

7  21, 22) are no longer relevant because the Court's summary judgment Order narrowed

8  the factual issues that remain for trial. Dkt. 80 at 3. The Court held there was no

9  genuine dispute of material fact that plaintiff's card was reloadable and not marked as a

10 gift card or gift certificate; therefore, the imposition of service fees was permissible

11 under 15 U.S.C. 1693l-1. Although the Court concluded a prepaid card with the

12 characteristics of the card that plaintiff received may, under the EFTA, impose service

13 fees, there is a genuine dispute of material fact about whether the amount of fees

14 imposed was unfair.

15     The Court determined there is a genuine dispute of material fact for a jury to

16 decide whether the validated card was requested and solicited or was unrequested and

17 unsolicited; thus, it is for a jury to determine whether defendant's card was provided in a

18 manner prohibited under 15 U.S.C. 1693i.

19     Nonprivileged information is discoverable under Rule 26 if it is (1) relevant, and

20 (2) proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Plaintiff, as the party

21 seeking to compel discovery, must show his discovery requests are relevant to the

22 specific claims presently before the Court to ensure that discovery is not used as a

23 fishing expedition to explore already-dismissed claims. FRCP 26(b).

24

25

Plaintiff has shown his RFPs are relevant to the remaining claims in this case. Information regarding compliance with EFTA, procedures used to issue the release cards, materials provided to cardholders, when or how the cards were validated, how funds were handled, and communications with government agencies regarding the release cards are relevant to whether the cards were requested and solicited and if the service fees imposed were unfair.

Yet to the extent the requests relate to programs not relevant to the Complaint, plaintiff has not shown how those requests are relevant to the remaining claims.

CBKC contends the RFPs are not limited in time; plaintiff, at the outset of the RFPs, identified the relevant timeframe of documents that existed in January 1, 2020, to the present, "unless otherwise stated in the request," that are relevant to the release card program. Dkt. 78-1 at 12. The contract between CBKC and Numi, which finalized Numi has the release-card program manager, was signed in January 2020. Plaintiff has established the relevance of this timeframe.

Further, to the extent CBKC maintains that some of the information sought by plaintiff is protected by attorney-client privilege or attorney work product, it must identify the allegedly privileged information that has been withheld, or by redacting it from a document that is otherwise discoverable, and they are required to show the analysis in a privilege log. Boilerplate objections or blanket refusals in a response to discovery requests are insufficient to assert a privilege. *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005). Rule 26(b)(5)(A) requires that:

1    When a party withholds information otherwise discoverable by claiming that the

2  information is privileged or subject to protection as trial-preparation material, the party

3  must:

4          (i) expressly make the claim; and

5          (ii) describe the nature of the documents, communications, or tangible

6          things not produced or disclosed--and do so in a manner that, without

7          revealing information itself privileged or protected, will enable other parties

8          to assess the claim.

9    CBKC's failure to provide a privilege log violates Rule 26(b)(5)(A).

10   Plaintiff's motion to compel is granted as to document requests 2, 3, 5, 7, 8, 10,

11  14, 15, 17, 21, and 22, to the extent the requests are limited to the program relevant to

12  this case. CBKC is ordered to supplement their responses within 30 days of this Order.

13   **C. Whether CBKC must produce documents or information already in the possession of plaintiff's counsel from the *Brown* litigation.**

14

15   Finally, there are several RFPs and interrogatories where CBKC objected on the

16  grounds that the data requested was produced in *Brown v. Stored Value, Cards, Inc.*, a

17  case in the District of Oregon involving the same attorneys representing plaintiff in this

18  case. CBKC states the discovery requests seek duplicative information.

19   Federal Rule of Civil Procedure 1 explains that the federal rules, including those

20  governing discovery, should be "construed, administered, and employed by the court

21  and the partis to secure the just, speedy, and inexpensive determination of every action

22  and proceeding." The Court accepts plaintiff's contention that he seeks relevant

23  information and documents that may not have been included in the *Brown* litigation. But

24  to the extent such information and documents are already in the possession of plaintiff's

25

ORDER ON PLAINTIFF'S MOTION TO COMPEL (DKT. 76) - 12

attorney and may be reviewed and used in this case, even if those documents are from the *Brown* litigation, CBKC should not be required to unnecessarily spend time and funds to duplicate that production or seek that information from third parties. To the extent he has not done so to date, plaintiff should conduct a gap analysis and specify what information and documents he seeks from CBKC that is not duplicative of what plaintiff already has possession of, that was turned over in discovery in the *Brown* litigation. The parties should meet and confer to review the gap analysis, and to identify discoverable documents that plaintiff does not already have in their possession from the *Brown* litigation, within 14 days of this Order.

To the extent the documents requested are not in the possession of CBKC, either because CBKC does not have such documents or Numi or Central Payments does not, then the Court cannot order a party to produce documents they have no possession, custody, or control of. If CBKC responded to plaintiff's discovery requests stating that "no responsive documents exist," CBKC should confirm the status of such documents – whether they have possession, custody, or control of the documents.

Thus, plaintiff's motion to compel documents that are duplicative of documents produced in the *Brown* litigation is conditionally denied. To avoid duplicative work and costs on CBKC's part and CBKC is ordered to produce responsive documents (that plaintiff does not already have) within 30 days of this Order.

1

ATTORNEYS' FEES

2      Pursuant to Federal Rule of Civil Procedure 37(a)(5)(A), if a motion to compel is

3  granted the court must require the party whose conduct necessitated the motion to pay

4  the movant's reasonable expenses, including attorneys' fees, incurred in making the

5  motion unless "other circumstances make an award of expenses unjust."

6      Plaintiff's motion attorney's fees is denied. At this point, an award of expenses

7  would be unjust and the motion for attorney's fees is not ripe. An award of expenses

8  may be appropriate in the future if the defendant fails to respond in light of the Court's

9  Order.

10      Dated this 21st day of August, 2025.

11

12

_Theresa L. Fricke_
Theresa L. Fricke
United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

ORDER ON PLAINTIFF'S MOTION TO COMPEL (DKT. 76) - 14