UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SAMUEL C. RUTHERFORD, III,

Plaintiff,

v.

CENTRAL BANK OF KANSAS CITY,

Defendants.

Case No. 3:24-cv-05299-TLF

ORDER DENYING DEFENDANT'S MOTION FOR STAY PENDING RESOLUTION OF FEDERAL ACTION

This matter comes before the Court on Defendant Central Bank of Kansas City's ("CBKC") Motion to Stay Pending Resolution of a Federal Action Brought by Numi Against Plaintiff and Class Counsel. Dkt. 119. Plaintiff has filed a response in opposition. Dkt. 125. Defendant has filed a reply. Dkt. 131. Having considered the parties' submissions and the record, the Court DENIES the motion.

## I.    Background

This action has a certified nationwide class alleging violations of the Electronic Funds Transfer Act and a subclass under state-law claims based on defendant's own conduct in administrating prepaid cards that carried fees. *See* Dkt. 1, Complaint; Dkt. 56, Order on Plaintiff's Motion for Class. The federal and state claims arise from the same alleged actions by defendant — its assessment of fees, transfer of funds, issuance of cards, and disclosures to cardholders. Dkt. 56; Dkt. 116, Order Denying Defendant's Motion to Decertify the Class.

ORDER DENYING DEFENDANT'S MOTION FOR
STAY PENDING RESOLUTION OF - 1

Prior to the commencement of this suit, there was a class action involving the same prepaid debit card program. In *Brown v. Stored Value Cards, Inc.*, No. 3:15-cv-01370-MO (D. Or. 2017), Stored Value Cards, Inc., d/b/a Numi Financial ("Numi") partnered with a different bank to implement the program, and the action ended in a settlement ("Brown Settlement").

In this instant case, "Numi partnered with CBKC to execute and manage the prepaid debit card program." Dkt. 76, Order on Plaintiff's Motion to Compel; Dkt. 119 at 2.

On February 13, 2025, this Court certified a nationwide class that includes members of the *Brown* settlement that did not file a claim. Dkt. 56 at 5 ("The class is therefore not limited to those who opted out of *Brown*. The class definitions exclude individuals who filed for and received a recovery in *Brown*."). In certifying the class, the Court expressly rejected the argument that plaintiff's claims were barred by the *Brown* settlement, explaining that CBKC "is sued based on its own violations of the EFTA and Washington state-law claims" and not Numi's violations. Dkt. 56 at 5.

Defendant now seeks to stay this action pending resolution of a separate lawsuit filed by Numi in the United States District Court for the District of Oregon, Case No. 3:25-cv-02247-YY) (the "Oregon Action"). In that action, filed December 4, 2025, Numi asserts claims against plaintiff and class counsel for breach of the *Brown* settlement agreement and tortious interference, based on Numi's ongoing indemnification obligations to defendant arising from this litigation. *See* Oregon Action; Dkt. 119 at 2-3. Numi seeks damages and injunctive relief barring plaintiff and class counsel from further pursuing this action. *Id*.

- 2

Defendant argues that Numi is the "de facto defendant" here because it is indemnifying defendant's costs pursuant to an agreement and faces liability to defendant for any damages ultimately awarded to plaintiff and the class. Dkt. 119 at 6. Defendant also contends that the Oregon action could materially affect, and potentially dispose of, this case and so judicial efficiency favors resolving Numi's claims first. *Id*. at 8; Dkt. 131, Reply at 3-4.

Plaintiff responds that this action targets CBKC's own alleged misconduct, not Numi's, that courts have rejected the notion that a claim against an indemnified party constitutes an indirect claim against the indemnitor, and that CBKC has failed to establish the clear hardship required to justify a stay. *See* Dkt. 125, Plaintiff's Response to Defendant's Motion to Stay. Plaintiff further argues that the Oregon action seeks to relitigate issues already decided by this Court and that a stay would improperly delay relief to a certified class. *Id*.

## II.   Discussion

### A.  Legal Standard

The court's power to stay proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936*); see also Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) ("A district court has discretionary power to stay proceedings in its own court under [*Landis*]."). The court must consider three factors in determining whether to issue a stay: (1) the possible damage which may result from granting a stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly

- 3

course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)). "The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citation omitted). If there is "even a fair possibility" that a stay will harm the opposing party, the movant "must make out a clear case of hardship or inequity." *Lockyer*, 398 F.3d at 1112. As defendant is the proponent of a stay, it "bears the burden of establishing its need." *Clinton*, 520 U.S. at 708.

### 1. Possible Damage to Plaintiff and Class

If plaintiff's claim has merit, granting a stay could harm the public interest in allowing the allegedly harmful conduct to continue. *See, e.g.*, *DOT Operating Auth., Inc. v. LAV Permit, Inc.*, No. 24-cv-3183-SPG-AS, 2025 WL 1090929, at *2 (C.D. Cal. Mar. 20, 2025) (finding prejudice where further damage could continue if a stay was granted). According to plaintiff, "CBKC's release card programs generated more than $6 million in fees through both weekly and monthly fee structures, and nearly a quarter of a million class members lost their entire deposits to those fees." Dkt. 125 at 1-2.

Defendant argues there is no damage in granting the stay because "[t]his class is composed entirely of members of the *Brown* class who, through the *Brown* settlement, have already had the chance to obtain redress for their alleged injuries" and any delay in obtaining relief "is due to each individual class member's failure to submit a claim in *Brown*." Dkt. 131 at 3. However, the fact that class members did not submit claims in *Brown* does not diminish their interest in the timely adjudication of claims that this Court has already found are not barred by that settlement or eliminate the prejudice

- 4

associated with indefinite delay in a certified class action. Furthermore, the Court has already held EFTA's legislative purposes warrant continued class treatment, regardless of the response rate in *Brown*. Dkt. 116, Order Denying Defendant's Motion to Decertify the Class.

Additionally, harm may occur when a court asks one litigant, "to stand aside while a litigant in another court settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255. Staying this case would require plaintiff and the putative class "stand aside" while another Court resolves issues defendant hopes will reduce or eliminate its liability. This factor therefore favors plaintiff.

**2. Hardship to Defendant**

Defendant argues that it would suffer "significant damage and hardship" if required to proceed with this case in parallel with the Oregon federal action brought by Numi against plaintiff and class counsel. Dkt. 119 at 7. According to defendant, the Oregon court must first determine whether the claims asserted here are barred by the "broad release language in the *Brown* settlement agreement," as well as whether discovery efforts directed at Numi, including the subpoena served on Numi and any efforts to enforce it violate that agreement. *Id*. Defendant contends that, absent a stay, CBKC would be forced to continue "defending against potentially improper claims and demands" that the Oregon court may ultimately conclude are prohibited by the *Brown* settlement. *Id*. Defendant further asserts that resolving the Oregon action first would avoid "wastefulness" and that, regardless of the outcome, a ruling from the court overseeing the *Brown* settlement on the scope of the release "will no doubt be helpful in guiding the proper course of discovery and trial in this case going forward." *Id*. at 7-8.

- 5

Being required to litigate a case, however, even one that may ultimately be affected by another proceeding, does not by itself constitute sufficient hardship to warrant a stay. *Lockyer,* 398 F.3d at 1112 ("[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*."); *see also Reed v. Autonation, Inc.*, No. CV 16-8916-BROAGRX, 2017 WL 10592157, at *5 (C.D. Cal. Mar. 6, 2017) (finding that, while there was a possibility plaintiff's class claims would be mooted, defendant failed to meet their burden when their "clear case of hardship or inequity" was defending the suit and the burden of discovery.).

Furthermore, defendant underscores that Numi is bearing the costs of defense and indemnification. *See* Dkt. 119; Dkt 131. Hardship borne by a nonparty indemnitor does not satisfy CBKCs' burden as the movant. *Batoff v. Charbonneau*, 130 F. Supp. 3d 957, 968 (E.D. Pa. 2015) (holding a claim against an indemnified party does not operate as an "indirect claim" against the indemnitor.) This factor therefore favors plaintiff.

### 3. Judicial Economy and the Orderly Course of Justice

CBKC argues that a stay would promote judicial efficiency because the Oregon action may resolve threshold issues concerning the scope of the *Brown* settlement and Numi's indemnification obligations, potentially limiting or disposing of this case. Dkt. 119 at 8. However, this Court has already determined that the *Brown* settlement does not bar the claims asserted here and that CBKC is sued based on its own alleged violations of the EFTA and Washington law.

The timing of the respective proceedings further weighs against a stay. Defendant does not propose a defined or limited duration for the requested stay of the

- 6

entire case. The Oregon action will likely involve motion practice and additional discovery, resulting in an indefinite pause in a case that has already been pending since April 18, 2024 and has been certified for class treatment.

Additionally, this case has a summary judgment deadline of March 13, 2026. Dkt. 109. By contrast, the Oregon action was filed in December 2025 and remains at a preliminary stage. Granting a stay at this point would halt a certified class action with a rapidly approaching dispositive deadline in in favor of awaiting developments in newly filed litigation with an uncertain duration. The mere prospect of a favorable ruling sometime in the future for defendant is not enough to warrant a stay. *Reed*, 2017 WL 10592157, at *5. Waiting until the Oregon case is resolved does not promote judicial efficiency or the orderly administration of justice.

The Court finds that the *Landis f*actors favor denying the Motion to Stay.

### III.    Conclusion

For these reasons, the Court DENIES defendant's Motion to Stay (Dkt. 119).

Dated this 9th day of February, 2026.

Theresa L. Fricke
United States Magistrate Judge

- 7