UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SAMUEL C. RUTHERFORD, III,

Plaintiff,

v.

CENTRAL BANK OF KANSAS CITY,

Defendants.

Case No. 3:24-cv-05299-TLF

ORDER ON PLAINTIFF'S MOTION FOR SANCTIONS, MOTION TO COMPEL

This matter comes before the Court on plaintiff Samuel Rutherford III's Motion for Sanctions against defendant Central Bank of Kansas City ("CBKC"). Dkt. 122. Plaintiff seeks sanctions under Fed. R. Civ. P. 37(b)(2)(A) for CBKC'S alleged failure "to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a)" and for attorneys' fees under Fed. R. Civ. P. 37(b)(2)(C). Plaintiff alleges CBKC did not comply with the Court's August 21, 2025 discovery order ("Order"). Dkt. 122 at 2; Dkt. 99, Order on Plaintiff's Motion to Compel.

Plaintiff alleges defendant CBKC violated the Court's 8-21-2025 Order by: (1) refusing to obtain all responsive documents required to be produced under the order; (2) refusing to produce agreements setting the terms for delivering CBKC's release cards to class members by the facilities; (3) claiming that it had "produced documents

ORDER ON PLAINTIFF'S MOTION FOR SANCTIONS, MOTION TO COMPEL - 1

responsive" to requests when no responsive documents were provided without further explanation; and (4) by refusing to answer interrogatories regarding basic cardholder information. Dkt. 122 at 2.

CBKC claims they have fully complied with the order and provided the documents that were under CBKC's "control" because it had a legal right pursuant to a contract. Dkt. 127 at 2, CBKC's Response. Apparently, "Numi took the position that a *small number* of the demands fell outside CBKC's contractual rights." *Id.* (emphasis in original). Defendant contends that plaintiff has an issue with Numi, not CBKC, and should seek to enforce the subpoena he served on Numi in June 2025. Dkt. 127 at 2.

Plaintiff moves for relief under Rule 37, requesting that the Court:

1. Require CBKC to retain independent counsel for purposes of enforcing compliance with the Court's Order;

2. Order CBKC and its new counsel to provide supplemental responses;

3. Compel immediate production of documents responsive to RFP 10, 14, 19, 20 and Interrogatories 9 and 10, including production of class and transaction data in a usable comma-separated value format ("CSV" format); and

4.  Award attorney's fees and costs under 37(b)(2)(C).

For the reasons below, the Motion is GRANTED in part and DENIED in part.

## I.     Background

Plaintiff brings this putative class action against CBKC to recover damages for prepaid debit card fees charged to persons released from Pierce County Jail. *See* Dkt.

ORDER ON PLAINTIFF'S MOTION FOR SANCTIONS, MOTION TO COMPEL - 2

1, Complaint. Plaintiff alleges CBKC violated the Electronic Transfer Fund Act ("EFTA") when it issued unsolicited debit cards and charged fees that plaintiff did not agree to. *Id.* Plaintiff further alleges violations of the Washington Consumer Protection Act ("WCPA") and contends defendant is liable for conversion and unjust enrichment under Washington state law. *Id.*

Plaintiff served interrogatories and document requests on CBKC on February 19, 2025. Dkt. 122 at 2; Dkt. 123, Declaration of Chris R. Youtz ("Youtz Decl.") ¶ 2. CBKC served responses on April 21, 2025, objecting to some requests on the grounds that responsive information was in the possession of Numi and Central Payments, rather than CBKC. Dkt. 122 at 3; Dkt. 123, Youtz Decl. Ex. A. The parties met and conferred, and exchanged emails, but were ultimately unable to resolve their disputes.

On June 17, 2025, plaintiff served subpoenas *duces tecum* on Numi and Central Payments. Dkt. 122 at 29; Dkt 128, Declaration of Natalie I. Uhlemann ("Uhlemann Decl."), Exs. 1, 2.  The requests from Numi sought, among other things: (1) spreadsheets and/or databases containing class member data; (2) contracts with facilities or legal entities representing facilities; (3) marketing materials; and (4) communications between Numi and government entities regarding its release card program. *Id.*

Numi objected, asserting that service of the subpoena violated the Settlement and Release Agreement it executed with plaintiff's counsel in the *Brown* action litigation

ORDER ON PLAINTIFF'S MOTION FOR SANCTIONS,
MOTION TO COMPEL - 3

pending in United States Court for the District of Oregon. Dkt 128, Uhlemann Decl., Ex. 3 at 2, 13. Plaintiff has not moved to force the Numi subpoena. Dkt 127 at 3.

On July 2, 2025, plaintiff moved to compel. Dkt. 76. The Court granted in part and denied in part. *See* Dkt. 99.

The Court held that the information requested was relevant because "[i]nformation regarding compliance with EFTA, procedures used to issue the release cards, materials provided to cardholders, when or how the cards were validated, how funds were handled, and communications with government agencies regarding the release cards are relevant to whether the cards were requested and solicited and if the service fees imposed were unfair." Dkt. 99 at 11. This information is relevant now as it relates to plaintiff's theories regarding the timing and nature of the electronic fund transfer issue. Dkt. 116, Order Denying Defendant's Motion to Decertify the Class, and applicable for standing issues. Dkt. 136, Order Denying Plaintiff's Motion to Approve Class Notice.

The Court held a lack of physical possession did not relieve CBKC of production obligations. Dkt. 99, 6-11. After reviewing the governing agreements, including the January 31, 2020 Service Provider Agreement between CBKC and Numi (Dkt. 79, Ex. 5), the Court held "CBKC has the legal right to request, access, and obtain Numi's documents" and ordered CBKC to produce responsive documents "for information maintained by Numi or Central Payments but within CBKC's control…" Dkt. 99 at 9. The Court clarified:

ORDER ON PLAINTIFF'S MOTION FOR SANCTIONS, MOTION TO COMPEL - 4

> To the extent the documents requested are not in the possession of CBKC, either because CBKC does not have such documents or Numi or Central Payments does not, then the Court cannot order a party to produce documents they have no possession, custody, or control of…

*Id.* at 13. If "Numi and Central Payments do not have responsive documents, CBKC should so state with sufficient specificity. Boilerplate objections are not enough." *Id.* at 9-10.

The Court conditionally denied plaintiff's request for documents duplicative of those produced in the *Brown* litigation and ordered plaintiff to conduct a gap analysis and specify what information and documents he seeks from CBKC that is not duplicative of what plaintiff already has possession of, that was turned over in discovery in the *Brown* litigation, and for parties to meet and confer on that analysis. Dkt. 99 at 13.

The next day, CBKC provided Numi and Central Payments with the Court's order and plaintiff's discovery requests and demanded production of responsive materials. Dkt. 128, Uhlemann Decl. ¶ 2. CBKC served its supplemental responses on September 22, 2025. Dkt. 123, Youtz Decl., Ex. A.

Numi and Central Payments provided certain documents to CBKC in response to its demand. Dkt. 128, Uhlemann Decl. ¶ 3. However, Numi contended that some demands exceeded CBKC's contractual rights and continued efforts to obtain Numi-controlled information constituted a breach of the *Brown* settlement agreement. *Id.*; Dkt. 127 at 3.

## II.      Discussion

### A. CBKC's Supplemental Production Did Not Fully Comply with the Court's Prior Order

In response to a request for production of documents under Rule 34 of the Federal Rules of Civil Procedure, a party is to produce all relevant documents in his "possession, custody, or control." Fed. R. Civ. P. 34(a)(1).  A party may be required to produce a document that is in the possession of a nonparty entity if the party has the legal right to obtain the document. *Soto v. City of Concord,* 162 F.R.D. 603, 619 (N.D. Cal.1995).  "Control is defined as the legal right to obtain documents upon demand." *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999) (citation omitted). The Court has determined that CBKC possesses contractual rights sufficient to establish Rule 34 control over certain documents maintained by Numi and Central Payments. Dkt. 99 at 8.

Plaintiff asserts that "[o]nce control is established, a party must take reasonable, good-faith steps to secure responsive materials from the third party, including invoking contractual or legal enforcement mechanisms where necessary." Dkt. 122 at 12. Even so, "[o]rdering a party to produce documents that it does not have the legal right to obtain will oftentimes be futile, precisely because the party has no certain way of getting those documents." *In re Citric Acid Litig.*,191 F.3d at 1108; *see also* Dkt. 99 at 13 ("To the extent the documents requested are not in the possession of CBKC, either because CBKC does not have such documents or Numi or Central Payments does not, then the

ORDER ON PLAINTIFF'S MOTION FOR SANCTIONS,
MOTION TO COMPEL - 6

Court cannot order a party to produce documents they have no possession, custody, or control of.").

"The party seeking production of the documents ... bears the burden of proving that the opposing party has such control." *United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989). And the party responding to discovery has an independent duty to conduct a reasonable inquiry into the factual basis of its discovery responses. *Valdez v. Genesis Healthcare LLC*, 2021 WL 5989963, at *6 (C.D. Cal. Sept. 7, 2021).

Courts have held that a party asserting that it does not have custody or control over requested documents "must state so under oath and describe efforts he made to locate responsive documents." *Bryant v. Armstrong*, 285 F.R.D. 596, 603 (S.D. Cal. 2012); s*ee also Schwartz v. Mktg. Publ'g Co.,* 153 F.R.D. 16, 21 (D.Conn.1994) (citing cases establishing that the absence of possession, custody, or control of documents that have been requested must be sworn to by the responding party). ". . . .[I]f a responding party contends that documents are not in its custody or control, the court may require more than a simple assertion to that effect." *Bryant*, 285 F.R.D. at 603 (citation omitted).

The record reflects that CBKC requested documents from Numi and produced materials it received. Yet in response to RFPs 14, 23, 25, 27, CBKC's responses relay "Numi's position" that certain materials are confidential, proprietary, or outside CBKC's contractual rights:

ORDER ON PLAINTIFF'S MOTION FOR SANCTIONS,
MOTION TO COMPEL - 7

- **RFP 14:** "Subject to its objections, Defendant states that it does not have documents responsive to this request. Defendant requested documents responsive to this request from Numi. *It is Numi's position that Defendant does not have a legal contractual right to Numi's contracts and subcontracts, which are confidential and proprietary to Numi*. Nevertheless, CBKC has produced exemplar documents responsive to this request. See, e.g., CBKC_0002411, CBKC_0002434, CBKC_0002487, CBKC_0003084, CBKC_0003096." (emphasis added)

- **RFP 23**: Subject to its objections, Defendant states that it does not have information responsive to this request. Defendant further states that it requested information responsive to this request from Numi. *Numi's position is that Defendant does not have a legal contractual right to information on Numi's vendors or contractors, which is confidential and proprietary to Numi*. (emphasis added)

- **RFP 25:** Subject to its objections, Defendant states that it does not have information responsive to this request. Defendant has requested and produced information responsive to this request from Numi and Central Payments. *Numi's position is that Defendant has a legal contractual right to consumer marketing materials only. Numi's materials for marketing its program to facilities are property of Numi and are specifically exempted from CBKC ownership under the Program Management Agreement.* See CBKC00075. (emphasis added)

ORDER ON PLAINTIFF'S MOTION FOR SANCTIONS, MOTION TO COMPEL - 8

- **RFP 27**: Subject to its objections, Defendant states that it has produced its Board meeting minutes. Defendant further states that it requested information responsive to this request from Numi. *Numi's position is that Numi's board meeting minutes and materials are outside the scope of what Defendant is entitled to under its contract with Numi*. (emphasis added).

Dkt. 123, Youtz Decl., Ex. A. This motion for sanctions turns on whether CBKC has the legal right to access certain data and documents it alleges only Numi has access to.

The Court has found contractual control and determined the applicable agreement between CBKC and Numi gave CBKC the legal right to request, access, and obtain Numi's documents, not merely request them. Dkt. 99 at 9. A party asserting lack of custody or control must do more than offer a bare assertion. *Bryant v. Armstrong*, 285 F.R.D. at 603. If CBKC contends specific documents fall outside its contractual rights, it must: (1) identify the specific contractual language limiting access; (2) explain the steps taken to invoke its contractual enforcement rights; and (3) state under oath whether additional responsive documents exist and are being withheld.

Accordingly, CBKC is ORDERED to provide declarations or affidavits identifying the specific contractual language that limits access, detailing whether it has made a reasonable inquiry to locate responsive documents, identify any responsive documents that exist and are being withheld; and such declarations must address the inquiry and efforts to obtain responsive materials made on a request-by-request basis.

ORDER ON PLAINTIFF'S MOTION FOR SANCTIONS,
MOTION TO COMPEL - 9

**B. "Requested and Produced" is Not Sufficient — CBKC Must Provide Specific, Request-by-Request Supplementation**

For RFPs 2, 3, 4, 5, 7, 8, 9, 11, 15, 16, 17, 19, 21, 22, CBKC represents that it "requested and produced" responsive materials from Numi or Central Payments. Dkt. 123, Youtz Decl., Ex. A. The Court compelled the responses to RFP's 2, 3, 5, 7, 8, 10, 14, 15, 17, 21, and 22, as well as responses to other inquires pending a *Brown* gap-analysis. Dkt. 99 at 12. The Court held that if responsive documents do not exist or cannot be obtained, "CBKC should so state with sufficient specificity. Boilerplate objections are not enough." Dkt. 99 at 10. For each request at issue, CBKC must: (1) identify by Bates number where responsive documents appear in its production; (2) confirm whether additional responsive materials exist; (3) describe the steps taken to obtain those materials, particularly where the Court has found contractual control; and (4) state clearly whether any materials were withheld and on what basis.

The record shows there may be deficiencies in the defendant's production. Examples of deficiencies include:

**1. RFP 10 — Transfer-Related and Transactional Records**

RFP 10 seeks documents reflecting the movement of funds from facilities to CBKC, loading of release cards, and transfers of fees, including interbank confirmations and ACH notices. Dkt. 123, Youtz Decl., Ex. A at 15.

CBKC asserts that plaintiff clarified the scope of RFP 10 for the first time in the sanctions motion, citing deposition testimony obtained in August, and that CBKC

ORDER ON PLAINTIFF'S MOTION FOR SANCTIONS, MOTION TO COMPEL - 10

promptly produced additional responsive documents. Dkt. 122 at 6-7; Dkt. 128, Ulhmann Decl. ¶ 11.

Plaintiff relies on testimony from CBKC's Rule 30(b)(6) witness that CBKC maintains account statements reflecting transfers from facilities to CBKC, transfers used to load release cards, and transfers to pay fees. Dkt. 122, 6-7; Dkt. 123, Youtz Decl., Ex. B at 35-37. The same witness testified that Central Payments worked with Numi to arrange ACH transfers from facilities to CBKC. *Id.* at 26–28.

Plaintiff represents that no account statements, interbank confirmations, or ACH notices were produced. Dkt. 123, Youtz Decl. ¶¶ 12–13. Although CBKC suggested those materials were contained within a 112 GB production, plaintiff asserts they were not identifiable *Id.* ¶ 14.

CBKC must identify by Bates number any produced account statements, confirmations, or ACH records. If such documents exist and were not produced, CBKC must supplement. If they do not exist or are outside its control, CBKC must state so clearly and under oath.

### 2. RFP 14 – Facility Contracts

RFP 14 seeks contracts maintained by Numi with facilities that distribute CBKC's release cards. Dkt. 122 at 8.  The Court ordered CBKC to produce those contracts. Dkt. 99 at 12.

In its supplemental response, CBKC states that it requested responsive documents, but that it is Numi's position that CBKC has no legal contractual right to

ORDER ON PLAINTIFF'S MOTION FOR SANCTIONS, MOTION TO COMPEL - 11

Numi's facility contracts because they are confidential and proprietary. Dkt. 127 at 5; Dkt. 128, Uhlemann Decl., Ex. 5 at 18. CBKC also represents that it produced "several exemplars of Numi facility agreements." Dkt. 127 at 13. The extent to which those exemplars are responsive to RFP 14 is unclear.

Plaintiff points to Section III.9 of the Program Management Agreement, which provides that Numi "shall cause all Distributors to enter into a Distribution Agreement approved by CBKC as a condition of participation in the Program." Dkt. 122 at 8 (citing Dkt. 79-1 at 17). The agreement defines "Distributor" to include entities that enroll prospective cardholders and maintain card inventory for distribution. *Id.* (citing Dkt. 79-1 at 5). Plaintiff further argues a facility is as an "independent distributor of the Card Program." Dkt. 122 at 8 (citing Dkt. 67 at 43 (Numi–Kittitas County Jail agreement)).

Plaintiff has proffered at least some evidence supporting further contractual control. If CBKC disputes that conclusion, it must provide a detailed contractual analysis and sworn explanation. Otherwise, responsive facility agreements must be produced.

### 3. RFP 25 – Marketing Materials

In its supplemental response, CBKC states that Numi's marketing materials are Numi's property and are exempt from CBKC ownership under the Program Management Agreement. Dkt. 123, Youtz Decl., Ex. A at 25-26. CBKC further asserts that marketing materials were excluded from the Court's prior Order. Dkt. 127 at 5.

The Court did not expressly rule on marketing materials. Dkt. 99 at 9 ("the Agreement states CBKC owns the Cards, the Cardholder relationship, Cardholder Data,

ORDER ON PLAINTIFF'S MOTION FOR SANCTIONS,
MOTION TO COMPEL - 12

the Programs, Required Program Disclosure Templates, and Program Materials (excluding Marketing Materials)…."). Plaintiff asserts here that "the Numi agreement places them within CBKC's contractual control. CBKC's approval of Marketing Materials is required, and Numi is obligated to provide CBKC with a complete set of all Marketing Materials in electronic form." Dkt. 132 at 4 (citing Dkt. 79-1 at 11, § III.3(a), 8, § III.12).

If CBKC has the contractual right to obtain marketing materials, Rule 34 requires production. If CBKC contends the materials fall outside the scope of the Court's prior Order or outside its contractual rights, it must state so explicitly and support that position with specific contractual language. If such documents exist and were not produced, CBKC must supplement. If they do not exist or are outside its control, CBKC must state so clearly and under oath.

## C. ESI Provided Must Be Provided in a Usable Format

As for electronically stored information ("ESI"), the Rules provide that the requester of such information "may specify the form or forms in which electronically stored information is to be produced." Fed. R. Civ. P. 34(b)(1)(C).[1] "If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." Fed. R. Civ. P. 34(b)(2)(E)(ii). This production may require the producing party

---

[1] For accessible or inaccessible ESI to be discoverable, the relevance test set in Rule 26(b) must be satisfied. Both broadly written and expansively construed, Rule 26(b)(1) allows the discovery of "[r]elevant information," even if inadmissible at trial, "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The Court has determined these requests were relevant. *See* Dkt. 99.

ORDER ON PLAINTIFF'S MOTION FOR SANCTIONS,
MOTION TO COMPEL - 13

to translate or convert the requested information into a reasonably usable form. *See* Fed. R. Civ. P. 34(a)(1)(A); *Equal Emp. Opportunity Comm'n v. Gypsum Express, L.T.D.*, 345 F.R.D. 442, 448 (E.D. Ky. 2024).  If there is a dispute that cannot be resolved regarding the form of disclosures through the meet-and-confer process, then the issue is for the Court to resolve. *Barten v. State Farm Mut. Auto. Ins. Co.,* No. CV-23-00267-TUC-CKJ (MSA), 2024 WL 2890246, at *3 (D. Ariz. June 10, 2024), *aff'd*, No. CV-23-00267-TUC-CKJ (MSA), 2024 WL 6957687 (D. Ariz. Aug. 22, 2024) (citing Fed. R. Civ. P. 34 advisory committee notes to 2006 Amendment.).

Plaintiff did not specifically request that the format be in the comma-separated value ("CSV" format) in the requests for discovery. Dkt. 123, Youtz Decl., Ex. A. The parties' joint status report and discovery plan does not contemplate a specific format for ESI. Dkt. 26.

In response to Interrogatories 9 and 10 and Requests for Production 19 and 20, CBKC takes the position that it does not itself maintain the underlying cardholder or transaction data necessary to provide summary responses. Dkt. 122, Youtz Decl., Ex. A. According to CBKC, that data is housed and maintained by Numi. Dkt. 127 at 7-8.

CBKC explains that under Section 9.1(d) of the Sponsorship Services Agreement, Central Payments may request from Numi a daily extract of cardholder and transaction data, from which the requested summaries could be derived. *Id.* CBKC states that it invoked that mechanism and produced relevant files. *Id.* It also represents that information responsive the interrogatories "is already in the possession of plaintiff's

ORDER ON PLAINTIFF'S MOTION FOR SANCTIONS,
MOTION TO COMPEL - 14

counsel" and defendant "also previously produced a spreadsheet that it requested from Numi containing information responsive to [the requests]." Dkt. 123, Youtz Decl, Ex. A at 8-10.

In response to plaintiff's contention that the production is not reasonably usable, CBKC maintains that it possesses only a contractual right to "raw" data, that it lacks legal access to Numi's database and does not have a license to use its proprietary software to query its database, and that requiring formatted spreadsheets would improperly compel Numi to create new documents. Dkt. 127 at 7-11. CBKC further contends that, while the production is voluminous, it is usable if plaintiff elects to retain a vendor to process and organize it. *Id*

The production at issue consists of what CBKC describes as a "daily extract" of card transaction data contained in 1,626 zipped folders, each containing up to three million lines of data. Dkt. 123, Youtz Decl. ¶ 20. CBKC is correct that Rule 45 does not require a third-party such as Numi to answer interrogatories. Dkt. 127 at 11 (citing *Correct Transmission LLC v. Microsoft Corp.*, 2023 WL 7301240, at *1 (W.D. Wash. Nov. 6, 2023). But CBKC is legally obliged to answer.

Federal Rule of Civil Procedure 34 requires parties to produce documents that already exist, but it does not require parties to create new data. *Paramount Pictures Corp. v. Replay TV*, 2002 WL 32151632, at *2 (C.D. Cal. May 30, 2002). Even so, "[t]here is a distinct difference between requiring a party to create new data that does not currently exist and requiring a party to produce already existing data in a reasonably

ORDER ON PLAINTIFF'S MOTION FOR SANCTIONS, MOTION TO COMPEL - 15

usable form." *Frasier Healthcare Consulting, Inc. v. Grant Mem'l Hosp. Reg'l Healthcare Ctr.*, No. 2:12-cv-87, 2014 WL 12701042, at *5 (N.D.W. Va. Jan. 9, 2014) (holding that a defendant was not being asked to create new data but was required to produce existing data in a reasonably usable format).

The record further reflects that Numi has previously provided CBKC-related data in CSV format in the *Brown* litigation and in productions in this case. Dkt. 123, Youtz Decl. ¶ 23; *see, e.g.*, Dkt. 69-1. CBKC represents that plaintiff is "already in possession of class data provided by Numi in Excel format during the *Brown* litigation." Dkt. 127 at 8. That history undermines the contention that the only data available is an unusable raw extract or that formatted production would require the creation of entirely new information.

Plaintiff also relies on Section VIII.1(a) of the Numi agreement, which provides that "all Program accounts shall be owned and controlled by CBKC." Dkt. 122 at 10 (citing Dkt. 79-1 at 34). Plaintiff argues that Section 9.1(d), cited by CBKC, merely describes a reconciliation data format between CBKC and Central Payments and does not limit CBKC's right to obtain its own account data in other formats. Dkt. 122 at 10.

The Court ordered that disputes concerning class data and related transactional information must be addressed through a structured "gap-analysis" process, particularly with respect to data produced in the *Brown* litigation. Dkt. 99 at 12–13.

CBKC contends that much of the class data plaintiff seeks (i.e., Interrogatories 9 and 10 and Requests for Production 19 and 20) was already produced in connection

ORDER ON PLAINTIFF'S MOTION FOR SANCTIONS,
MOTION TO COMPEL - 16

with the *Brown* class data and that plaintiff has not meaningfully complied with the Court's directive to identify with specificity the alleged "gaps" in that production. Dkt. 127 at 10. Plaintiff, in turn, asserts that the prior data is incomplete but has not yet provided a request-by-request or field-by-field explanation of what is missing after accounting for the *Brown* production. *See generally* Dkt. 122.

This issue must be resolved through the previously ordered gap-analysis process before additional production is compelled. Accordingly, before requesting additional production of materials that defendant contends were previously produced, plaintiff must identify with specificity the documents or categories of information already in its possession, explain how those materials are incomplete or deficient, and clearly articulate the gaps that remain. The burden is on plaintiff to explain whether it already possesses the requested material and to demonstrate what, if anything, remains outstanding after accounting for prior productions.

Plaintiff shall, within 30 days, provide the defendant a detailed gap-analysis identifying with specificity the documents, datasets, or data fields previously produced in *Brown* and explaining the precise gaps that remain. CBKC shall respond within 30 days of receiving plaintiff's gap-analysis and provide plaintiff with information identifying where in the defendant's prior productions the disputed information appears — or state, under oath, that the identified data does not exist within its possession, custody, or control. Once the analysis has been conducted, to the extent responsive cardholder or transactional data exists for Interrogatories 9 and 10 and Requests for Production 19

ORDER ON PLAINTIFF'S MOTION FOR SANCTIONS,
MOTION TO COMPEL - 17

and 20, CBKC must produce such data in CSV form.

### 3. Provided Materials Must Be Responsive

Plaintiff contends that CBKC's supplemental production included substantial volumes of facially nonresponsive material, including unrelated emails, administrative documents, political advertisements, golf tournament announcements, and supply orders. Dkt. 122 at 12; Dkt. 123, Youtz Decl. ¶ 19 (asserting that approximately 3,000 of 3,584 pages produced were previously produced, nonresponsive, or irrelevant).

While some incidental nonresponsive material may appear in large productions, a production comprised predominantly of irrelevant or duplicative documents suggests the absence of a meaningful responsiveness review. Going forward, all supplemental productions must reflect a good-faith review for responsiveness.

### 4.  Rule 45 Subpoenas and Rule 34 Obligations

Plaintiff issued subpoenas to Numi and Central Payments under Rule 45. Dkt 128, Uhlemann Decl., Exs. 1, 2. CBKC argues that any remaining deficiencies are properly addressed through subpoena enforcement. Dkt. 127, 11-12. This Court has held "[a]lthough plaintiff subpoenaed Numi and Central Payments, that does not automatically dissolve CBKC's discovery obligations especially given that these documents are within the custody or control of CBKC." Dkt. 99 at 9.

Federal Rule of Civil Procedure 45 governs nonparty discovery. Rule 34 governs party discovery. These obligations are distinct. A party may not shift its Rule 34 burden to a Rule 45 process where documents are within its control. *See Ceballos v. Banda*

ORDER ON PLAINTIFF'S MOTION FOR SANCTIONS,
MOTION TO COMPEL - 18

*Maguey Corp.*, No. 2:23-cv-10911-CBM-MARx, 2025 WL 819565, at *4, *9 (C.D. Cal. Jan. 31, 2025) ("the fact that Plaintiffs have subpoenaed [the non-party possessing the documents] does not relieve Defendants' burden to search for and produce responsive documents within its possession, custody, or control").

Defendant cites *Thurman v. Dembski*, 2022 WL 2338698, at *1 (W.D.N.Y. June 29, 2022) and *Jordan v. Central Transp. LLC*, 2019 WL 885916, at *2 (W.D. Ark. Feb. 22, 2019) for the proposition that CBKC's failure to obtain sufficient responses from Numi are substantially justified by circumstances beyond its control.

In *Thurman,* the court determined that its earlier finding of "control" was based on misinformation regarding ownership and access rights. *Id.* Once clarified, the Court held defendant "lacked ownership," had terminated his relationship with the relevant third party, and had been barred from access to the relevant records. *Id.* Sanctioning the defendant under Fed. R. Civ. P. 37(a)(5)(A) would have penalized him for failing to produce documents truly beyond his control.

Here, this Court has analyzed the governing Service Provider Agreement and expressly found that CBKC has the legal right to request, access, and obtain certain Numi documents. Dkt. 99 at 8-9. Unlike the defendant in *Thurman*, CBKC has not demonstrated that the Court's prior control finding was factually incorrect. Nor has CBKC shown that it invoked specific contractual enforcement mechanisms and was denied access under contractual limitations. Instead, CBKC largely relies on Numi's

ORDER ON PLAINTIFF'S MOTION FOR SANCTIONS,
MOTION TO COMPEL - 19

position that certain documents are "confidential and proprietary," without identifying any contractual provision that negates CBKC's access rights.

In *Jordan*, the sanctioned party was an individual defendant who was no longer affiliated with the co-defendant. *Jordan,* 2019 WL 885916, at *2. The court found that one defendant had no legal or practical control over the other's participation in discovery, and the reconsideration of a prior sanctions order was grounded on the notion that a party cannot be punished for another party's discovery failures when it lacks control over that party's conduct. *Id.*

Here the issue does not involve imputing one party's discovery misconduct to an unrelated co-defendant. Instead, this Court has determined that CBKC has contractual control over certain documents maintained by Numi. Dkt. 99 at 8-9. This dispute concerns whether CBKC exercised its own discovery obligations in good faith under Rule 34, not whether it should be held responsible for the independent conduct of Numi.

### 5. Counsel and Conflict Concerns

Plaintiff contends that CBKC's noncompliance with the Court's discovery order was not merely deficient but "structural," arising from counsel's alleged conflict of interest based on simultaneous representation of CBKC and Numi. Dkt. 122, 12-13. According to plaintiff, CBKC's counsel accepted service of plaintiff's subpoena to Numi and submitted objections on Numi's behalf, including objections to categories of documents that this Court later ordered CBKC to obtain and produce. *Id.* at 12-13.

ORDER ON PLAINTIFF'S MOTION FOR SANCTIONS,
MOTION TO COMPEL - 20

Plaintiff argues that, even if Numi later retained separate counsel with respect to the subpoena, counsel's prior role in resisting discovery on Numi's behalf created divided loyalties that materially limited CBKC's willingness or ability to enforce its contractual rights against Numi. *Id.* at 13. Plaintiff further points to Numi's contractual indemnification provisions and related litigation involving the *Brown* settlement as evidence that Numi's interests are not aligned with conducting discovery in this action. *Id.* at 12.

Plaintiff maintains that this alleged conflict explains CBKC's acceptance of what plaintiff characterizes as a "self-selected and incomplete" production from Numi and supports remedial sanctions under Rule 37(b)(2), including appointment of conflict-free discovery counsel to ensure enforcement going forward. *Id.* at 13.

The primary responsibility of regulating the conduct of lawyers in federal practice lies with the district courts, governed by the rules of professional conduct of the state in which that district lies. *Gas–A–Tron of Az. v. Union Oil Co. of Cal.*, 534 F.2d 1322, 1325 (9th Cir.1976). The Ninth Circuit has held district courts have the duty and responsibility to control and to supervise the conduct of the attorneys practicing before them. *Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir.1996).

Plaintiff is requesting to disqualify CBKC's counsel for at least the discovery portion of this dispute. Motions to disqualify counsel are disfavored. *Certain Underwriters at Lloyd's, London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 914, 918 (N.D. Cal.2003) (citation and internal quotation omitted).

ORDER ON PLAINTIFF'S MOTION FOR SANCTIONS,
MOTION TO COMPEL - 21

On this record, the Court finds no basis to conclude that an impermissible conflict exists or to require disqualification or appointment of conflict-free counsel. After plaintiff served subpoenas on Numi and Central Payments, CBKC's counsel accepted service of the subpoena directed to Numi and served objections on Numi's behalf for a limited purpose, including objections grounded in the *Brown* settlement and Numi's view of the scope of the release. Dkt. 127 at 12; Dkt. 128, Uhlemann Dec. ¶ 3. When disputes arose concerning the scope of materials Numi would provide, Numi retained separate counsel to address continuing discovery issues related to the subpoena. *Id.*

The Court finds no basis to conclude that an impermissible conflict exists or to require CBKC to retain separate counsel. That said, CBKC remains responsible for ensuring its discovery obligations are met.

### 6. Other Litigation

CBKC argues that District of Oregon litigation involving Numi and issues concerning the *Brown* settlement complicate production. The Court previously declined to stay this action. Dkt. 135, Order Denying Stay. Absent a stay, collateral litigation does not suspend compliance. *See Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). No order of this Court authorized delay pending resolution of the Oregon action.

ORDER ON PLAINTIFF'S MOTION FOR SANCTIONS,
MOTION TO COMPEL - 22

**7.  Sanctions**

Plaintiff seeks monetary and discretionary sanctions under Federal Rule of Civil Procedure 37(b), arguing that CBKC failed to comply with the Court's prior discovery order.

The Ninth Circuit has explained, "Federal Rule of Civil Procedure 37 authorizes the district court, in its discretion, to impose a wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules." *Wyle v. R.J. Reynolds Indus., Inc.,* 709 F.2d 585, 589 (9th Cir.1983) (citation omitted)*.* "[S]anctions may be imposed even for negligent failure to provide discovery." *Fjelstad v. Am. Honda Motor Co.,* 762 F.2d 1334, 1343 (9th Cir.1985) (citation omitted).

A finding of bad faith is not required for the Court to impose discovery sanctions under Rule 37, but good or bad faith may be considered in determining whether sanctions would be unjust. *See Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994); *Marquis v. Chrysler Corp.*, 577 F.2d 624, 641-42 (9th Cir. 1978) ("Although the failure to produce may not have been in bad faith, the presence or absence of bad faith is relevant to the choice of sanctions rather than to the question whether a sanction should have been imposed.").

**A.  FRCP 37(b)(2)(A) Sanctions**

The Ninth Circuit has identified factors that the courts should consider in determining the appropriateness of discovery sanctions: ("1) [T]he public's interest in

ORDER ON PLAINTIFF'S MOTION FOR SANCTIONS,
MOTION TO COMPEL - 23

expeditious resolution of litigation; 2) the court's need to manage its docket; 3) the risk of prejudice to the defendants; 4) the public policy favoring disposition of cases on their merits; [and] 5) the availability of less drastic sanctions." *See Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir.1997) (citation omitted).

Applying the *Wendt* factors, the Court finds: (1) the public's interest in expeditious resolution and the Court's need to manage its docket weigh in favor of compliance and against continued delay; (2) plaintiff has experienced some prejudice in the form of delay and motion practice; (3) the strong policy favoring resolution on the merits weighs against severe sanctions; (4) less drastic remedies remain available and are sufficient to address the deficiencies identified. The record reflects incomplete compliance, but not willful defiance or bad faith. **CBKC is ORDERED to supplement its production consistent with this Order within 75 days of this ORDER, unless, before the deadline, it requests an extension of time for good cause**.

## B. FRCP 37(b)(2)(C) Monetary Sanctions

Under Federal Rule of Civil Procedure 37(b)(2)(C), if a party fails to obey an order to provide discovery, "the court must order" payment of reasonable expenses, including attorney's fees, unless the failure was substantially justified, or other circumstances make an award unjust. Fed. R. Civ. P. 37(b)(2)(C). An action in the discovery context is "substantially justified" if reasonable people could differ on the matter in dispute. *See Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (describing "substantially justified" as satisfied if there is a "genuine dispute" or "if reasonable

ORDER ON PLAINTIFF'S MOTION FOR SANCTIONS,
MOTION TO COMPEL - 24

people could differ as to the appropriateness of the contested action") (citations omitted).

In its prior Order compelling production, the Court cautioned that "[a]n award of expenses may be appropriate in the future if the defendant fails to respond in light of the Court's Order." Dkt. 99 at 14. The record establishes that CBKC requested materials from Numi and produced documents in response to the Court's Order.

Yet the production was incomplete in certain respects, reflecting inadequate enforcement of CBKC's contractual rights and, potentially, insufficient review. The deficiencies do not reflect an outright refusal to comply, nor do they show negligence, or willful defiance or bad faith, particularly given Numi's third-party status, the contractual framework governing access to data, and related litigation. *See Sanchez Y Martin, S.A. de C.V. v. Dos Amigos, Inc.*, No. 17CV1943-LAB-LL, 2019 WL 3769191, at *3 (S.D. Cal. Aug. 9, 2019) ("Defendants' opposition to the remaining nine requests were sufficient to be deemed substantially justified even though the Court was not persuaded by Defendants."). The request for monetary sanctions regarding expenses or attorney's fees is therefore DENIED.

### III. Conclusion:

The Court declines to issue sanctions under Rule 37 and Plaintiff's Motion to Compel is GRANTED in part. The Court holds CBKC's supplemental production did not fully comply with the Court's prior Order and ORDERS:

ORDER ON PLAINTIFF'S MOTION FOR SANCTIONS,
MOTION TO COMPEL - 25

1. Within 30 days of this ORDER, plaintiff must send a detailed *Brown* gap-analysis to CBKC.

2. Within 30 days of receiving plaintiff's gap-analysis, CBKC shall:

   a. Provide plaintiff with sworn declarations detailing its reasonably inquiry;

   b. Identify by Bates number all responsive materials;

   c. Produce responsive ESI in CSV format; and

   d. Clarify whether any responsive materials are being withheld and on what basis.

3. Within 75 days of this ORDER, CBKC must supplement its production consistent with this Order, unless, before the deadline, it requests an extension of time for good cause.

Failure to comply with this Order may result in sanctions under Fed. R. Civ. P. 37.

Dated this 5th day of March, 2026.

*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge

ORDER ON PLAINTIFF'S MOTION FOR SANCTIONS,
MOTION TO COMPEL - 26