UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SAMUEL C. RUTHERFORD, III,

Plaintiff,

v.

CENTRAL BANK OF KANSAS CITY,

Defendants.

Case No. 3:24-cv-05299-TLF

ORDER DENYING SUMMARY JUDGMENT MOTION; AND SETTING DISCOVERY HEARING

Plaintiff brought suit against Central Bank of Kansas City (CBKC) alleging it violated the Electronic Transfer Fund Act (EFTA) when it issued unsolicited debit cards and charged fees. Dkt. 1, Complaint. Plaintiff further alleges that this unsolicited prepaid card issuance and related fees violated the Washington Consumer Protection Act (WCPA) and defendant is liable for conversion and unjust enrichment under Washington state law. *Id.* This is a class action to recover damages for prepaid debit card fees charged to persons released from the Pierce County Jail. *Id.*

Plaintiff asserts the following provisions of the EFTA were violated:

1. 15 U.S.C. § 1693i(a) and 15 U.S.C. § 1693i(b)(4) because defendant allegedly did not obtain a request or application from plaintiff before issuing and validating the card given to plaintiff;
2. 15 U.S.C. § 1693i(b)(2) because defendant allegedly did not provide plaintiff with terms and conditions of the card before the card was validated;

3. 15 U.S.C. § 1693a(12) because defendant allegedly took fees out of plaintiff's account, and these were "unauthorized electronic funds transfer[s]."
4. 15 U.S.C. § 1693l-1 because defendant allegedly imposed a service fee with respect to a general use prepaid card.

Dkt. 1, Complaint, at 11-13.

Before the Court is defendant's second summary judgment motion, plaintiff's opposition and motion to strike evidence, defendant's reply and motion to strike evidence, plaintiff's surreply. Dkts. 152, 163, 166, 169.

Regarding defendant Central Bank of Kansas City's previous motion for summary judgment (Dkt. 62), the Court granted that motion in part and denied it in part. 2025 WL 1744761 (W.D. Wash. June 24, 2025). The Court interpreted the terms used in 15 U.S.C. § 1693i(a)[1], "request" and "unsolicited", and held that summary judgment

---

[1] 15 U.S.C. § 1693i states:

**(a) Prohibition; proper issuance**

No person may issue to a consumer any card, code, or other means of access to such consumer's account for the purpose of initiating an electronic fund transfer other than--

**(1)** in response to a request or application therefor; or

**(2)** as a renewal of, or in substitution for, an accepted card, code, or other means of access, whether issued by the initial issuer or a successor.

**(b) Exceptions**

Notwithstanding the provisions of subsection (a), a person may distribute to a consumer on an unsolicited basis a card, code, or other means of access for use in initiating an electronic fund transfer from such consumer's account, if--

**(1)** such card, code, or other means of access is not validated;

**(2)** such distribution is accompanied by a complete disclosure, in accordance with section 1693c of this title, of the consumer's rights and liabilities which will apply if such card, code, or other means of access is validated;

**(3)** such distribution is accompanied by a clear explanation, in accordance with regulations of the Bureau, that such card, code, or other means of access is not validated and how the consumer may dispose of such code, card, or other means of access if validation is not desired; and

was denied because "there is a genuine dispute of material fact for a jury to decide whether the card was requested and solicited or was unrequested and unsolicited." *Id.* at *6. The Court interpreted the term "request" as meaning "an individual asking and expressing a desire, by knowing and voluntary choice, to obtain a card" and interpreted the term "unsolicited" to mean "a situation where the individual did not ask or express a desire by knowing and voluntary choice." *Id.* at *5.

In the Court's order on the defendant's first summary judgment motion, the Court granted summary judgment for defendant on the fourth issue and found there was not any genuine dispute of material fact regarding liability under 15 U.S.C. § 1693l-1 because the card was re-loadable and it was not a gift card. Dkt. 73 at 11-13.

In the current summary judgment motion, defendants argue that summary judgment should be granted in their favor, even though the Court previously denied summary judgment on the claim as to plaintiff's allegations under 15 U.S.C. § 1693i(b)(4).

Defendant asserts that plaintiff's claims are a "moving target", more facts have been developed through discovery, and Rutherford's "new theory" is that, under Section 1693i(a), he now contends that the cards were unsolicited because the funds were available on plaintiff's debit card before plaintiff was asked to sign the document requesting a card. Dkt. 152, defendant's summary judgment motion, at 2-3, 9-10.

---

**(4)** such card, code, or other means of access is validated only in response to a request or application from the consumer, upon verification of the consumer's identity.

**(c) Validation**

For the purpose of subsection (b), a card, code, or other means of access is validated when it may be used to initiate an electronic fund transfer.

In plaintiff's response, he states that a consumer must request the card first, then the card may be issued, scanned, loaded, activated, and validated – after the request and not before. Dkt. 163, plaintiff's response, at 7-8. Plaintiff asserts that in his situation, he did not approach the bank and ask for a card, and "[t]he card was indisputably validated – 'active' and usable – when handed to Rutherford." *Id.* at 8, 10.

For the reasons discussed below, the Court denies defendant's motion for summary judgment on this issue.

At the time Mr. Rutherford was released on April 22, 2023, the Pierce County Jail was trustee of his funds, and the inmate trust account was held by Key Bank. Dkt. 154, Declaration of Larry Taft dated May 20, 2026, (Taft Decl.), at 2, ¶ 4. Pierce County Jail staff scan a tokenized barcode on the card carrier, which allows the card to be recognized by Numi's proprietary software. Dkt. 155, Declaration of Brad D. Golden dated May 21, 2026, (Golden Decl.), at 2, ¶ 4. The scanning of this barcode assigns value to that card and loads it with an assigned value based on the balance in the inmate accounting system and funds held in the jail's trust account. *Id*.

The amount of funds released for Mr. Rutherford was $500.49, "originated for transfer through the ACH system from Pierce County Jail's Trust Account on Monday, April 24, 2023." Dkt. 154, Daft Decl. at 2-3, ¶ 6. The amount was settled when funds were deducted from the Pierce County Trust Account on April 25, 2023. *Id.* at 3, ¶ 6.

After he received a form authorizing return of his funds on the prepaid card, plaintiff was handed a validated prepaid debit card, and a folded Cardholder Agreement. Dkt. 63-1, Excerpts of Deposition of Samuel C. Rutherford III (Rutherford Dep.), at 3 (p. 28 ll. 8-25; p. 29, ll. 1-9). His name had already been written on the signature block on the

back of the prepaid MasterCard (Dkt. 23, Rutherford Declaration (Rutherford Decl.), at 2); he asserts that he signed the receipt form before he received the card because he understood he had to do this in order to receive his money. *Id*. at 2; Dkt. 63-1 at 4 (p. 31, ll. 3-22; p. 32 ll. 8-25); Dkt. 16, Golden Decl., Ex. 3 at 14.

Plaintiff testified that he understood that if he did not sign the receipt, he would not get his money. *Id.* at 3 (p. 29, ll. 3-13).

The card is affixed to a carrier; the facility delivers the Cardholder Agreement and required disclosures with the card; key information about the card, including the most common fees and how to avoid incurring such fees, is printed there. Dkt. 155, Golden Decl., at 1, ¶ 2. He also received a PIN.

Under the signature block the card stated, "By accepting, signing or using this Card, you agree to the terms of the Cardholder Agreement." Dkt. 23, Ex. A at 6; *see also* Dkt. 16, Golden Decl., Ex. 3 at 14.

The Transaction Receipt stated as follows:

> I hereby authorize and request the return of my funds on the Numi Prestige Prepaid Mastercard and confirm receipt of the Cardholder Agreement and Fee Schedule. I understand the Card is active and there may be fees associated with the use of the Card. These fees are listed in the Cardholder Agreement and Fee Schedule. I further understand that I may choose not to use the Card and can request a check be mailed to me in accordance with the terms set forth in the Cardholder Agreement and Fee Schedule.

Dkt. 16, Golden Dec., Ex. 3 at 14.

On the same date he was released, on April 22, 2023, defendant asserts plaintiff used the Numi Prestige Prepaid Mastercard at a cash machine and withdrew $494.00 from the prepaid debit MasterCard loaded with the value $500.49. *Id*. at Ex. 4, at 16. Plaintiff asserts that, "My first attempt to withdraw money was rejected due to

insufficient funds. I was able to withdraw $490.00 in my second attempt, but I was forced to pay a fee of four dollars for using the ATM, plus another fee of $2.95. That left $2.54 in the account, which I could not withdraw from an ATM. That money was subsequently taken from me by the imposition of a monthly fee." Dkt. 48, Declaration of Samuel Rutherford, at 2, ¶ 2. The documentation provided by defendant shows that on April 22, 2023, Mr. Rutherford used the debit card at an ATM, there was a balance inquiry fee of $1.00, an ATM withdrawal of $494.00, an ATM Withdrawal Fee of $2.95, and a monthly service fee of $2.54. Dkt. 16, Golden Decl., Ex. 4 at 16.

Summary judgment is proper when the pleadings, discovery, and affidavits "show that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Federal Rule of Civil Procedure (Fed. R. Civ. P.) 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those which may affect the outcome. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

When applying these standards, the Court must draw all reasonable inferences in favor of the non-moving party. *United States v. Johnson Controls, Inc.*, 457 F.3d 1009, 1013 (9th Cir. 2006), *abrogated on other grounds by United States ex rel. Hartpence v. Kinetic Concepts, Inc.,* 792 F.3d 1121 (9th Cir. 2015) (en banc). The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case, or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy his burden of persuasion at trial. *Block v. City of Los Angeles*, 253 F.3d 410, 416 (9th Cir. 2001).

Once this has occurred, the procedural burden shifts to the party opposing summary judgment. That party must go beyond the pleadings and affirmatively establish a genuine issue on the merits of their case. Fed.R.Civ.P. 56(e). The nonmoving party must do more than just deny the veracity of everything offered or show a mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence is also insufficient to create a genuine factual dispute. *Anderson*, 477 U.S. at 252.

The nonmoving party must demonstrate that the disputed fact is material, and that the dispute is genuine. *Anderson*, 477 U.S. at 248-49. The nonmoving party's failure of proof "renders all other facts immaterial," creating no genuine issue of fact and thereby entitling the moving party to the summary judgment it sought. *Celotex Corp*., 477 U.S. at 323. Even so, if there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment may not be granted. *Anderson*, 477 U.S. at 250.

The Court denies summary judgment. As the defendants confirmed, the Pierce County Jail scanned the card before it was given to Mr. Rutherford. When the card was scanned, it was loaded with the amount of value equal to the funds that Mr. Rutherford had in his jail account with Key Bank for which the Pierce County Jail was the trustee; that was the amount Mr. Rutherford was able to withdraw on the day he was released.

Defendants appear to be arguing that Mr. Rutherford's card was not actually issued until the banks settled their accounting. The timing of the bank-to-bank accounting is not the question under Section 1693i(a).

Taken in the light most favorable to the non-moving party, under Section 1693i(a), there are two issues: (1) whether plaintiff made a request, and (2) if so, when did he made that request – did the request occur before the defendant issued the card in a form that it was ready to be used, or after? Both issues are genuine disputes of material fact.

Although Mr. Rutherford's signature appears on the form, he disputes that he applied his signature; he contends someone else wrote his name on it. And even if he did sign the document, Mr. Rutherford disputes whether the document was signed under circumstances that would objectively show the signature was a request made in a manner required by the EFTA statutes and regulations; he states that before receiving the card he had not received information about choices to obtain his money by another means.

For these reasons, the Court denies summary judgment on plaintiff's claims under Section 1693i(a). The Court did not rely on the declaration of Gerald L. Blanchard (Dkt. 164) for the analysis of this summary judgment decision; the Court will rule on the admissibility of Mr. Blanchard's expert witness evidence when it rules on the defendant's *Daubert* motion (Dkt. 184).

As for the defendants' other arguments for summary judgment, the Court denies summary judgment on the remainder of the arguments in defendant's summary judgment motion. There is no right to summary judgment and the Court may deny summary judgment "where there is reason to believe that the better course would be to allow further proceedings or to proceed to trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). After discovery disputes have

been resolved, and after discovery is complete, the Court may consider these arguments. *See Texas Partners v. Conrock Co.,* 685 F.2d 1116 (9th Cir. 1982) (summary judgment should not be granted if there are triable issues of fact and discovery is ongoing). The Clerk of Court is directed to set a hearing on the parties' discovery disputes for the same date the Court hears argument on defendant's motion to exclude (Dkt. 184) plaintiff's proffered expert witness, Gerald L. Blanchard.

Dated this 25th day of November, 2026.

Theresa L. Fricke
United States Magistrate Judge